UNITED STATES of America,
Plaintiff-Appellee,

v.

James H. NORTON, Jr. and John A.
O'Connell, Jr.,
Defendants-Appellants.

No. 83–3410.

United States Court of Appeals,
Eleventh Circuit.

March 22, 1985.

Francis J. DiMento, Carolyn M. Conway, Cornelius H. Kane, Jr., Boston, Mass., for Norton.

Howard W. Skinner, Jacksonville, Fla., for O'Connell.

Curtis Fallgatter, Asst. U.S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Before RONEY and CLARK, Circuit Judges, and SIMPSON, Senior Circuit Judge.

RONEY, Circuit Judge:

James H. Norton and John A. O'Connell were convicted of conspiracy to defraud the United States Department of Housing and Urban Development (HUD), making false material declarations before the Grand Jury, influencing, obstructing and impeding the due process of justice, and obstructing a witness in violation of 18 U.S.C.A. §§ 371, 1503, 1623 and 2.

On appeal defendants allege a Speedy Trial Act violation and that there was insufficient evidence to support convictions under the "making or using" language of 18 U.S.C.A. § 1623. They argue the district court improperly refused an instruction as to "making and using" which accorded with their interpretation of the law. In addition, the defendants claim they were improperly denied a severance to avoid a *Bruton* violation and several trial errors. We affirm.

O'Connell, a Boston businessman, and Norton, his corporate attorney, applied to HUD for approximately $2.1 million in grant assistance to renovate a portion of the Boston pier area and to install a shore facility to service fishing vessels. A large number of false documents were submitted with the application and supplemental materials, including forged and false financing commitment letters and financial statements. Many of the acts of the conspiracy occurred in Florida and concerned false documents for the purchase of a floating dry dock and six fishing vessels from a St. Augustine, Florida based company. The HUD office in Boston was responsible for administering the project once HUD approved the grant. The City of Boston Economic Development and Industrial Corporation was directly involved with supervision and distribution of the grant funds to O'Connell. False documents were also submitted to support the disbursements of the funds. In excess of $2 million was ultimately disbursed.

*Speedy Trial Act*

The trial was originally set for December 1982. Due to unavailability of counsel, defendants moved for continuance on November 8, 1982. The motion was granted, with trial reset for January 10, 1983. At defendants' second request due to continuing unavailability of counsel on January 12, 1983, the district court granted a continuance until April 21, 1983. On February 3, 1983, the court without motion set the trial for April 25, 1983 to allow the trial to start at the beginning rather than in the middle of the week, to accommodate out-of-town witnesses and counsel.

Defendants argue their trial did not commence within the seventy days prescribed by the Speedy Trial Act, 18 U.S.C.A. §§ 3161–3174, because of the "longer than necessary" continuances granted by the district court. They maintain there was reasonable basis to continue the trial to February 15, 1983, the time when Norton's trial counsel first became available, but there was no reason to continue the trial to April 21 or to April 25, 1983.

Defendants' Speedy Trial claims border on frivolity. The Speedy Trial Act provides specific guidance on exclusions of time related to continuances. 18 U.S.C.A. § 3161(h)(8)(A) and (B). The trial court has broad discretion in granting continuances. *United States v. Hope*, 714 F.2d 1084, 1086 (11th Cir.1983) (citing *United States v. Henry*, 698 F.2d 1172, 1174 (11th Cir.1983)). The district court, after having granted the first motion for continuance that was accompanied by an open-ended waiver of

speedy trial by the defendants, was confronted with the additional and renewed motions for continuance to accommodate defense counsel. The motions were accompanied by Norton's stipulation waiving speedy trial rights, and bolstered by defendants' oral request for continuance at the court's status conference. The defendants even sought an emergency writ of mandamus from the court of appeals before the district court granted one request for a continuance.

In denying defendants' motion to dismiss based on Speedy Trial Act violations, the district court specifically found that

defendants effectively waived their rights to a speedy trial, that the trial was delayed based on these waivers, that the ends of justice served by granting the various continuances ... outweighed the interests of the public and the defendants in a speedy trial, and that the periods of delay challenged by defendants are properly excludable from computations under the Speedy Trial Act.

In so finding, the district court cited the defendants' speedy trial right waivers, the unavailability of O'Connell's counsel, O'Connell's assertion of his Sixth Amendment right to counsel, and Norton's claim that he would be prejudiced if his alleged coconspirator were forced to proceed without prepared counsel.

■ These reasons were specific and within those contemplated by § 3161(h)(8)(A) and (B). There was sufficient basis to reset this trial to April 21, 1983 and then to April 25 to start at the beginning of the week. Having been met with three prior requests for continuances, the district court could well set a date far enough in the future to forestall repeated requests. There was no assurance of the availability of counsel on February 15 nor did counsel ever report his availability for trial prior to the dates set. *See United States v. Campbell,* 706 F.2d 1138, 1140 n. 4 (11th Cir.1983). Defense counsel never objected to the district court's granting of the continuances or to the date set for trial and did not even mention any speedy trial problem in a court appearance in preparation for the trial. Defendant cannot now contest the statutory grounds relied upon by the trial court in granting the continuances and setting the date for trial. The record reveals no abuse of discretion by the court.

*Section 1623(a)*

■ Defendants contend that to prove the "making or using" of a false document, 18 U.S.C.A. § 1623(a), the Government must show the defendants relied on the documents or testified as to the verity of their contents. O'Connell and Norton argue they "merely identified" the documents as business records, were never asked whether the contents of these documents were true and correct and never supplied such information, therefore, the Government failed to prove the "making or using" of documents as prescribed by 18 U.S.C.A. § 1623(a).

This case is similar to *United States v. Dudley,* 581 F.2d 1193 (5th Cir.1978). There the defendant falsely testified that she signed a contract on a specific date. The Court held that the defendant's "assertion falsely described her own conduct and falsely authenticated the document as a true and correct exemplification of an actual event...." 581 F.2d at 1197. The Court found this testimony gave verity to the document, and was a denial of her act of signing a backdated instrument differing from the true contract. As such, her "testimony was 'use' of a document [within § 1623(a).]" 581 F.2d at 1197–98.

Defendants here "used" the documents as contemplated by § 1623(a). Each document, which defendants had affirmatively presented to the Grand Jury, was displayed to them during their testimony. These documents were falsely identified as business records and as checks sent to St. Augustine Trawlers, when they were not actual business records nor actual checks representing true transactions. The false business letters identified were created after the events occurred and were neither business records of O'Connell's Seafood nor of St. Augustine Trawlers. The false documents were identified as depicting events and

records that were in reality nonexistent. Defendants did more than "merely identify" the documents as business records, as was hypothetically contemplated in *Dudley* dictum. 581 F.2d at 1198 n. 3. The false documents were identified as depicting events and records that were nonexistent.

### Section 1623 Jury Instruction

■ The trial court utilized Title 18 Offense Instruction Number 30, as to the perjury counts. Comm. on Pattern Jury Instructions, U.S. Fifth Circuit District Judges Ass'n, *Pattern Jury Instructions: Criminal Cases* 119 (1979). The court declined to give a jury instruction on the issues of "made or used" as specifically requested by defendants, but granted defendants' motion that a definition of "use" be given as stated by the court in *United States v. Pommerening*, 500 F.2d 92 (10th Cir.), *cert. denied*, 419 U.S. 1088, 95 S.Ct. 678, 42 L.Ed.2d 680 (1974). The defendants sought no further definitions of the term "made." Viewed as a whole the jury instruction fairly and accurately stated the law.

### Asserted Trial Errors

■ We have carefully examined and find no merit in the other contentions concerning the trial of this case. The six-minute portion of the Government's Exhibit 41C pertaining to a discussion by O'Connell of his efforts to import marijuana, unknown to Norton, and not related to this case, was properly excluded by the trial court. *United States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir.1978); *United States v. Brown*, 547 F.2d 1264, 1266 (5th Cir.1977).

The complaint regarding O'Connell's statement to Jerry Thompson, Government Exhibit 44T, fails to identify any specific and compelling prejudice that would require severance under Fed.R.Crim.P. 14. *See United States v. Bovain*, 708 F.2d 606, 613–14 (11th Cir.) *cert. denied*, —— U.S. ——, 104 S.Ct. 251, 497, 551, 78 L.Ed.2d 238, 690, 724 (1983); *United States v. Butera*, 677 F.2d 1376, 1385 (11th Cir.1982), *cert. denied*, 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 958 (1983); *United States v. Bright*, 630 F.2d 804, 813 (11th Cir.1980).

The *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), complaint fails since that evidence admissible under the co-conspirator exception to the hearsay rule was not subject to exclusion under *Bruton*. *See United States v. Archbold-Newball*, 554 F.2d 665, 677 (5th Cir.), *cert. denied*, 434 U.S. 1000, 98 S.Ct. 644, 54 L.Ed.2d 496 (1977).

The argument that Government witnesses impermissibly responded to cross-examination questions with narrative, non-responsive answers, frequently expanding the answer with testimony not subject to the inquiry is neither supported by the record nor by a showing of prejudice.

■ As to the admission of co-conspirator statements, it is acceptable for the trial court to permit the evidence to proceed chronologically, without holding a *James* hearing, relying upon the Government to "connect up" the co-conspiratorial statement. *United States v. Haimowitz*, 725 F.2d 1561, 1575 (11th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 563, 83 L.Ed.2d 504 (1984); *United States v. Ricks*, 639 F.2d 1305, 1310 (5th Cir. Unit B, 1981). Defendants demonstrate no prejudice in this procedure. Norton's argument that certain unidentified statements made after the conspiracy ended were inadmissible is frivolous because he fails to identify the challenged statements or indicate whether any objections were made regarding the admissibility of the statements.

The argument that an *Apollo* instruction should have been given is answered by *United States v. James*, 590 F.2d 575, 579 (5th Cir.) (en banc), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). *See United States v. Apollo*, 476 F.2d 156 (5th Cir.1973).

■ There was no plain error in not giving any instruction on fraud. The trial court adhered to Title 18 Offense Instruction Number 3A, Comm. on Pattern Jury Instructions, U.S. Fifth Circuit District Judges Ass'n, *Pattern Jury Instructions: Criminal Cases 60–62 (1979),* when instructing the jury as to the elements of

Count I, conspiracy to defraud the United States in violation of 18 U.S.C.A. § 371. These instructions accurately state the elements required to support a conviction of conspiracy to defraud the United States.

There was clearly sufficient evidence to support the conviction so that the trial court did not err in denying the motions for judgment of acquittal.

AFFIRMED.