STATE OF NORTH CAROLINA v. WALLACE CHRISTOPHER COLLINS

No. 8525SC1385

(Filed 17 June 1986)

1. Conspiracy § 5.1— conspiracy to sell cocaine—statements of coconspirator—admissibility

Evidence that defendant brought two people to a restaurant pursuant to a previously agreed upon plan to sell cocaine was sufficient to establish a conspiracy involving defendant so that extrajudicial statements by one coconspirator were admissible in a joint trial of the three conspirators; moreover, the statements were made during the course of and in furtherance of the conspiracy where, so far as the coconspirator knew, the original plan to sell cocaine was still in effect when he made his statements; he even took the SBI agent involved in the sale to a coconspirator's home and hangouts after the statements were made; and the statements were made to assure the SBI agent that one coconspirator would return with the cocaine and that the conspiracy would achieve its ends.

2. Criminal Law § 75.9— volunteered statement—no improper interrogation—statement admissible

Defendant's statement that he was at a particular restaurant where a cocaine sale was supposed to take place was not the product of improper interrogation where defendant himself testified on *voir dire* that he admitted being present without being provoked by the arresting officer; in addition, the State produced substantial other evidence that defendant was the driver of the truck which delivered the coconspirators to the crime scene so that admission of defendant's statement, even if improper, was not prejudicial.

3. Conspiracy § 8— conspiracy to sell cocaine—severity of sentence—no passing of drugs immaterial

In a prosecution for conspiracy to traffick in cocaine, defendant's argument that no drugs were actually delivered and that he was therefore unduly harshly punished by a sentence of seven years imprisonment and a $50,000 fine was without merit, since it was the illegal agreement, not the amount of illicit drugs delivered, which controlled, and defendant received the statutory minimum sentence mandated by the legislature for all persons convicted of this class of crime.

APPEAL by defendant from *Saunders (Chase B.), Judge*. Judgment entered 26 July 1985 in Superior Court, CATAWBA County. Heard in the Court of Appeals 12 May 1986.

Defendant was tried upon proper indictment for conspiracy to traffick in cocaine. He was tried along with his alleged coconspirators, Grant Bowers and Cara Lipford. At trial, none of the defendants presented evidence. The State presented evidence as follows:

SBI Agent Stubbs drove to a fast-food restaurant in Hickory with an unnamed informant for the purpose of negotiating a drug purchase with Lipford. They waited awhile but no one showed up so they drove away. When they returned to the restaurant half an hour later, Bowers was standing at the curb. Other officers in the area had seen a light blue pickup truck drop Bowers off while Stubbs was gone. Stubbs and the informant stopped to pick Bowers up and he got in the back seat. Stubbs' car then parked in the restaurant parking lot. Bowers stated that "Cara and Chris" had dropped him off and would return shortly.

Ten minutes later a light blue pickup truck entered the parking lot and pulled up next to the driver's side of Stubbs' car. Lipford got out of the truck and got in the back seat of Stubbs' car. Stubbs, in the passenger seat of his car, could see that the truck was driven by a white male with dark hair and a yellow baseball cap, but he did not positively identify the driver. The other officers got the license number of the truck, which was registered to defendant's brother.

Stubbs told Lipford he wanted 1½ ounces of cocaine. Lipford got out and went back to the truck. After a few minutes in the truck, she returned to Stubbs' car and told him she could get the cocaine and what it would cost. Lipford said she needed the money first, that she would go and get the drugs, and that she would leave Bowers with Stubbs until she returned. Stubbs gave Lipford $2,850.00 and she said she would be back in 20 minutes. Lipford went back to the truck and left with the same white male driver going toward Lenoir.

Lipford did not return, however. Stubbs, the informant, and Bowers waited together in Stubbs' car at the restaurant for approximately six hours. During this time, Bowers made statements to the effect that he had been involved in drug deals with Chris for approximately five years, that Chris was "all right," and that there was no reason to suspect foul play. Stubbs and Bowers to-

gether drove to Lipford's home and hangouts but they could not find her anywhere.

Police observed the same light blue pickup truck parked at defendant's home in Lenoir early that morning, about six hours after it left the restaurant. They saw defendant, who is a white male, driving it later the same day, while wearing a yellow baseball cap.

Defendant was arrested in Lenoir three days later by Officer Clontz. Clontz stopped defendant on the street and told him he had a warrant for his arrest for trafficking in cocaine in Catawba County. Clontz testified that defendant said "What is this shit all about?" Clontz replied that defendant was supposed to have been at the (named) restaurant. Defendant responded, according to Clontz, "I was down there."

The jury found defendant guilty as charged. The court imposed the mandatory minimum sentence. Defendant appeals.

*Attorney General Thornburg, by Special Deputy Attorney General Ann Reed, for the State.*

*Ronald E. Bogle for defendant-appellant.*

EAGLES, Judge.

Defendant argues seven assignments of error. However, he failed to place any exceptions in the record "immediately following the record of judicial action" which his assignments and exceptions purport to address. *See* App. R. 10(b)(1). Rather, defendant's exceptions simply direct us to various groups of pages in the record where he contends the erroneous actions occurred. Defendant has therefore not properly presented his questions for review by this Court. App. R. 10(a); *State v. Smith*, 50 N.C. App. 188, 272 S.E. 2d 621 (1980). Nevertheless, in our discretion we consider the merits of the case.

I

[1] Defendant first argues that the court erred in joining the three defendants' cases for a single trial. The question of joinder was addressed to the sound discretion of the trial court. *State v. Samuel*, 27 N.C. App. 562, 219 S.E. 2d 526 (1975). Abuse of that discretion must be shown by demonstrating some palpable prej-

udice, as opposed to mere general grievances. *See State v. Davis,* 289 N.C. 500, 223 S.E. 2d 296, *death sentence vacated,* 429 U.S. 809, 50 L.Ed. 2d 69, 97 S.Ct. 47 (1976). The only specific prejudice claimed consisted of the admission of Bowers' statements.

### A

Defendant argues that Bowers' statements should have been excluded under *Bruton v. United States,* 391 U.S. 123, 20 L.Ed. 2d 476, 88 S.Ct. 1620 (1968). Generally the *Bruton* rule provides that extrajudicial confessions of a non-testifying co-defendant implicating a defendant are inadmissible as violative of the Sixth Amendment. *See State v. Fox,* 274 N.C. 277, 163 S.E. 2d 492 (1968). The *Bruton* rule is a limited one, however. *La Grenade v. Gordon,* 60 N.C. App. 650, 299 S.E. 2d 809 (1983). Where the incriminating admissions of a non-testifying co-defendant are admissible under other well-recognized rules of evidence, *Bruton* does not apply. *State v. Hardy,* 293 N.C. 105, 235 S.E. 2d 828 (1977).

### B

One well-recognized exception to the general proscription against the introduction of hearsay evidence is that statements made by coconspirators during the course of and in furtherance of the conspiracy are admissible. G.S. 8C-1, R. Ev. 801(d)(E). We have recently held that *Bruton* does not apply to evidence admissible under this exception. *State v. Brewington,* 80 N.C. App. 42, 341 S.E. 2d 82 (1986). *See also State v. Mettrick,* 54 N.C. App. 1, 283 S.E. 2d 139 (1981) (suggesting, but not reaching, similar result), *aff'd,* 305 N.C. 383, 289 S.E. 2d 354 (1982). This is consistent with federal decisions considering coconspirator statements and the *Bruton* rule. *See e.g. United States v. Norton,* 755 F. 2d 1428 (11th Cir. 1985); *United States v. Archbold-Newball,* 554 F. 2d 665 (5th Cir. 1977) (would be admissible if tried jointly *or* separately), *cert. denied,* 434 U.S. 1000, 54 L.Ed. 2d 496, 98 S.Ct. 644 (1977). *See also Dutton v. Evans,* 400 U.S. 74, 27 L.Ed. 2d 213, 91 S.Ct. 210 (1970) (distinguishing right to confrontation and rules excluding hearsay evidence). *Bruton* accordingly did not require exclusion of Bowers' statements.

## II

The key question is whether Bowers' statements fit the co-conspirator exception to the hearsay rule. Defendant argues (1) that not only did the State fail to prove a conspiracy, but (2) that at the time Bowers made the incriminating statements the alleged conspiracy had failed and terminated, making the statements outside its scope. We disagree.

### A

A conspiracy may be proven by direct or circumstantial evidence. *State v. Rozier*, 69 N.C. App. 38, 316 S.E. 2d 893, *cert. denied*, 312 N.C. 88, 321 S.E. 2d 907 (1984). The crime is established upon a showing of an *agreement* to do an unlawful act or to do a lawful act by unlawful means, whether or not overt acts occurred. *State v. Bindyke*, 288 N.C. 608, 220 S.E. 2d 521 (1975). A conspiracy may be shown by a number of indefinite acts, which, taken individually, might be of little weight, but taken collectively point to its existence. *State v. Whiteside*, 204 N.C. 710, 169 S.E. 711 (1933). An *express* agreement need not be shown; a mutual, implied understanding is sufficient. *Id.; State v. Rozier, supra.* The evidence is considered in the light most favorable to the State. *State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1980). Ordinarily the factual issue of the existence or nonexistence of a conspiracy is for the jury. *State v. Rozier, supra.*

We think the evidence presented sufficed to establish *prima facie* the existence of a conspiracy sufficient to allow admission of statements of coconspirators and to go to the jury. Stubbs went to the restaurant to make a drug contact. A truck similar to one later identified as belonging to defendant's brother and driven by defendant dropped off Bowers. Rather than enter the restaurant or go about any other business, Bowers waited and was picked up by Stubbs, indicating a prior arrangement. Stubbs testified without objection that Bowers said "Cara and Chris" dropped him off. The pickup then returned and pulled up immediately next to Stubbs' car though the parking lot was not crowded, again indicating a prior arrangement. Lipford entered Stubbs' car and a drug deal was discussed. Only after Lipford had gone back to the driver of the truck and returned to Stubbs' car was the deal with Stubbs finalized and the money handed over. This evidence, that the meeting with Bowers and Lipford was arranged in advance

and that the drug deal was not finalized until Lipford had gone back to the truck, sufficed to establish the participation of the driver of the truck (who came to the restaurant twice) in whatever transaction was arranged. There was sufficient evidence that defendant was the driver in the testimony that "Chris" dropped Bowers off, the match of the yellow baseball cap, and the facts that the truck was registered to defendant's brother, defendant was driving it six hours later and it was seen parked at his home.

In *State v. Caldwell*, 68 N.C. App. 488, 315 S.E. 2d 362, *disc. rev. denied*, 312 N.C. 86, 321 S.E. 2d 901 (1984), we reached a similar result. There was evidence that a dealer came to defendant's house, was seen talking to defendant (there was no evidence of the words exchanged), went away with defendant and returned with defendant and the drugs (no evidence that defendant ever possessed drugs), and gave money to defendant. Likewise, in *State v. Allen*, 57 N.C. App. 256, 291 S.E. 2d 341 (1982), we affirmed a conviction for conspiracy to rob a store where the only substantive evidence was that defendant was present when the robbery was suggested and volunteered to provide a gun. He got the gun but did not participate in the robbery. Here there was evidence from which the jury could find that defendant brought Bowers and Lipford to the restaurant pursuant to a previously agreed plan, and that the plan was to sell cocaine. This evidence, taken collectively in the light most favorable to the State, sufficed to establish a conspiracy involving defendant. Bowers' statements, if they met the other criteria of G.S. 8C-1, R. Ev. 801(d)(E), were therefore admissible.

B

Defendant argues that the statements implicating him in an extended course of cocaine dealings came *after* Lipford had absconded and therefore did not occur *during the course of* the conspiracy. Statements made prior to or subsequent to the conspiracy are not admissible under R. Ev. 801(d)(E). *State v. Gary*, 78 N.C. App. 29, 337 S.E. 2d 70 (1985), *disc. rev. denied*, 316 N.C. 197, 341 S.E. 2d 586 (1986). When a conspiracy ends under the rule is a question of fact. *Id.* This determination can be a difficult one. *See generally* 4 J. Weinstein & M. Berger, Weinstein's Evidence Section 801(d)(2)(E)[01] at 801-247 *et seq.* (1985) (discussing identical federal rule).

In *United States v. Mason*, 658 F. 2d 1263 (9th Cir. 1981), defendant contended that a statement by an unarrested coconspirator (which tended to identify defendant as a participant in the conspiracy), made after all other conspirators, including defendant, had been arrested, was inadmissible. The court rejected the argument on two main grounds: (1) the conspirator at large may still act in furtherance of the conspiracy and (2) *from the perspective* of the unarrested conspirator, the conspiracy was still in existence. Likewise, in *United States v. Rucker*, 586 F. 2d 899 (2d Cir. 1978), the court concluded that the original conspiracy to rob a bank still existed even though the gunman assigned to carry out the actual robbery lost his nerve and fled before he carried out the robbery. Therefore statements made after the aborted attempt were admissible. These decisions are persuasive.

Here, as far as Bowers knew, the original plan to sell cocaine was still in effect. In fact, he took Stubbs to Lipford's home and hangouts *after* the statements were made. The court did not err in finding that Bowers' statements were made "in the course of" the conspiracy.

## C

Defendant also contends that the statements were not "in furtherance of" the conspiracy. Again, we turn to federal decisions, which have regularly held that statements of "reassurance" are in furtherance of a conspiracy. *United States v. Mason, supra* (statement that source not scared off); *United States v. Sandoval-Villalvazo*, 620 F. 2d 744 (9th Cir. 1980) (reassurance during 3½ hour wait that source would produce drugs); *United States v. Cambindo Valencia*, 609 F. 2d 603 (2d Cir. 1979) (reassurance of steady supply), *cert. denied sub nom. Bermudez Prado v. United States*, 446 U.S. 940, 64 L.Ed. 2d 795, 100 S.Ct. 2163 (1980). Bowers' statements were made to reassure Stubbs that Lipford would return and that the conspiracy would achieve its ends. His statements of reassurance were clearly in furtherance of the conspiracy.

## D

Accordingly, we overrule defendant's assignments regarding joinder of the cases, the admission of Bowers' statements, and the sufficiency of the evidence.

### III

Defendant next contends that the court erred in denying his motion for mistrial, based on the State's attempt to use certain statements of the three codefendants. Defendant contends these had not been properly supplied pursuant to his discovery requests. The versions provided to defendant in discovery and those presented at trial appear substantially similar, and none of the new material was introduced. The court allowed a recess to consider the statements. We condemn the practice of withholding portions of statements from discovery, but under the circumstances of this case, we cannot say that any error was prejudicial.

### IV

[2]  Defendant also contends that the court erred in admitting into evidence his own statement that he was at the restaurant. He relies on *Rhode Island v. Innis*, 446 U.S. 291, 64 L.Ed. 2d 297, 100 S.Ct. 1682 (1980), arguing that Officer Clontz elicited the evidence by making statements intended to provoke an incriminating response before defendant had been read his rights, thus making the statement inadmissible. Defendant himself testified on *voir dire* that he admitted being present without being provoked by Clontz ("I just said that"). This was evidence permitting the court to find, as it did, that the statement was not the product of interrogation. In addition, the State produced substantial other evidence that defendant was the driver of the truck. We find no error, but even assuming error, we find it insufficiently prejudicial to warrant reversal.

### V

Defendant argues that the court erred in denying his motions to dismiss and to set aside the verdict. As we have noted, the motions were correctly denied even without Bowers' incriminating statements. With those statements, the evidence clearly sufficed to go to the jury.

### VI

[3]  Finally, defendant contends that the punishment received, the statutory minimum seven years imprisonment and $50,000 fine, was unconstitutionally disproportionate to the crime proven. He argues that no drugs were ever actually delivered, and he was therefore unduly harshly punished. We note that it is the *illegal agreement*, not the amount of illicit drugs delivered (even if none

at all) that controls. *State v. Rozier, supra.* This is simply not one of those "exceedingly rare" non-capital cases where the Eighth Amendment requires resentencing. *See Solem v. Helm,* 463 U.S. 277, 77 L.Ed. 2d 637, 103 S.Ct. 3001 (1983), *relying on Rummel v. Estelle,* 445 U.S. 263, 63 L.Ed. 2d 382, 100 S.Ct. 1133 (1980). We note too that defendant received the statutory minimum sentence mandated by the legislature for *all persons* convicted of this class of crime. This assignment is overruled.

## CONCLUSION

The jury convicted defendant on sufficient evidence and the sentence was the minimum set by law. He received a fair trial, free of prejudicial error.

No error.

Chief Judge HEDRICK and Judge COZORT concur.