DAVIS, Judge.
Derrick Dantay Smith ("Defendant") appeals from his convictions for conspiracy to sell or deliver heroin, conspiracy to possess with intent to sell or deliver heroin, and attaining the status of a habitual felon. On appeal, Defendant argues that the trial court erred by admitting certain hearsay statements contained in a video recording. After careful review, we conclude that the trial court did not err in denying Defendant's motion to suppress but remand for the correction of a clerical error.
Factual and Procedural Background
The State presented evidence at trial tending to establish the following facts: On 17 November 2014, Sergeant David Fortson of the Mooresville Police Department was conducting an undercover investigation into potential heroin dealing by Renee Potter. Sgt. Fortson arranged for a confidential informant (the "CI") to set up a drug transaction on that date whereby Sgt. Fortson would purchase 3.5 grams of heroin from Potter in exchange for $490. The drug deal was to occur mid-day at a Food Lion parking lot in Mooresville, North Carolina.
Based upon information provided by the CI, Sgt. Fortson anticipated that Potter would arrive in a Ford Mustang and be accompanied by her drug dealer. Sgt. Fortson was in the backseat of the CI's vehicle, which was parked at the Food Lion, and additional undercover officers were positioned nearby to provide backup.
At 1:47 p.m., Defendant pulled into the Food Lion parking lot in his Ford Mustang-with Potter sitting in the passenger seat-and parked next to the CI's vehicle. Sgt. Fortson observed Defendant talk briefly with Potter inside the Mustang and then hand her something. Shortly thereafter, Potter exited the Mustang and climbed into the backseat of the CI's vehicle and sat next to Sgt. Fortson. Sgt. Fortson paid Potter the agreed upon $490, along with $10 for gas, in exchange for the 3.5 grams of heroin. After the sale, Potter exited the vehicle, and Sgt. Fortson gave the "take down" signal for the other officers to move in and arrest Potter and Defendant.
Upon seeing the approaching officers, Defendant attempted to flee by driving his vehicle over a grassy median. However, another officer drove up, got out of his car, and pointed his pistol at Defendant, who then surrendered. The officers placed Defendant and Potter under arrest. Officers then found $1,708 in cash on Defendant's person and discovered in his vehicle a marijuana "blunt," a spoon coated with a tar-like substance that Sgt. Fortson believed to be heroin residue, and a syringe.
On 5 October 2015, Defendant was indicted for conspiracy to sell or deliver heroin; conspiracy to possess with intent to manufacture, sell and deliver heroin; possession with intent to manufacture, sell and deliver heroin; and maintaining a vehicle for the purpose of keeping or selling a controlled substance.
A jury trial was held before the Honorable Julia Lynn Gullett in Iredell County Superior Court beginning on 1 March 2016. During the trial, the State sought to admit into evidence a video recording taken inside the CI's vehicle showing what occurred during the drug transaction. Defendant moved to suppress this evidence, which contained statements made by Potter that incriminated Defendant, and a voir dire hearing was held to determine the tape's admissibility. The tape showed Sgt. Fortson telling Potter that he had $1,000 and asking whether he could purchase more heroin from her. The CI asked if Potter would go back to the Mustang and see whether Defendant would be willing to sell more heroin. Potter responded, "[f]or real, he really doesn't want you all to know he's my guy." When pressed to check whether more heroin was available from Defendant, Potter said she could go into the Mustang and "pretend" to be calling her dealer. Potter did not testify at the trial.
After the hearing, the trial court ruled that the statements in the video were admissible under Rule 801 of the North Carolina Rules of Evidence as statements of a co-conspirator in furtherance of a conspiracy and allowed the video to be admitted into evidence. Later that day, the Court issued an order containing written findings of fact and conclusions of law in support of this ruling.
Following the court's ruling, Defendant entered an Alford plea pursuant to a plea agreement and was convicted of conspiracy to sell or deliver heroin, conspiracy to possess with intent to sell or deliver heroin, and attaining habitual felon status. The trial court consolidated the offenses into one judgment and sentenced Defendant to 61 to 86 months imprisonment. Defendant gave oral notice of appeal in open court.
Analysis
Defendant's sole argument on appeal is that the trial court erred in denying his motion to suppress the video recording containing statements made by Potter during the drug transaction. Pursuant to N.C. Gen. Stat. § 15A-979(b), an order denying a motion to suppress may be reviewed upon an appeal from a judgment entered on a guilty plea if the defendant expressly reserves his right to appeal that ruling. N.C. Gen. Stat. § 15A-979(b) (2015).
Hearsay, which is any "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted[,]" N.C. R. Evid. 801(c), is "not admissible except as provided by statute or by [the North Carolina Rules of Evidence,]" N.C. R. Evid. 802. "A statement is admissible as an exception to the hearsay rule if it is offered against a party and it is ... a statement by a coconspirator of such party during the course and in furtherance of the conspiracy." N.C. R. Evid. 801(d)(E) ; see also State v. Valentine , 357 N.C. 512, 521, 591 S.E.2d 846, 854 (2003) ("A statement by one conspirator made during the course and in furtherance of the conspiracy is admissible against his co-conspirators." (citation and quotation marks omitted)).
Admission of a conspirator's statement into evidence against a co-conspirator requires the State to establish that: (1) a conspiracy existed; (2) the acts or declarations were made by a party to it and in pursuance of its objectives; and (3) while it was active, that is, after it was formed and before it ended. Proponents of a hearsay statement under the co-conspirator exception must establish a prima facie case of conspiracy, without reliance on the statement at issue. In establishing the prima facie case, the State is granted wide latitude, and the evidence is viewed in a light most favorable to the State.
Id. (internal citations and quotation marks omitted).
"A criminal conspiracy is an agreement between two or more persons to do an unlawful act or to do a lawful act by unlawful means." Id. at 522, 591 S.E.2d at 854 (citation and quotation marks omitted). "[D]irect proof is not required" to prove a conspiracy. Id. (citation and quotation marks omitted). A conspiracy "may be, and generally is, established by a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, they point unerringly to the existence of a conspiracy." Id. (citation and quotation marks omitted).
Here, the trial court determined that based on the nonhearsay evidence offered by the State, it had made a sufficient showing that Defendant and Potter had engaged in a conspiracy to possess heroin with the intent to sell or deliver it and that Potter's statements to Sgt. Fortson captured on video were made pursuant to the conspiracy and occurred before it had ended.
Defendant contends that the State failed to provide sufficient evidence to allow the testimony to be admitted under the co-conspirator exception to the hearsay rule because it did not establish that Defendant actually participated in the drug transaction. We disagree.
The trial court based its ruling upon the following uncontested findings of fact: (1) Potter was the target of a narcotics investigation; (2) Sgt. Fortson had arranged to make an undercover purchase of heroin from her; (3) Defendant drove Potter in his Mustang to the location of the planned drug transaction; (4) Defendant parked directly beside the vehicle in which Sgt. Fortson and the CI were seated; (5) before Potter stepped out of the Mustang, she and Defendant spoke, and it appeared that Defendant handed something to her; (6) once inside the vehicle with Sgt. Fortson, Potter handed him heroin in exchange for $490 along with $10 for gas; and (7) when officers yelled "Police, get down" at Defendant and Potter, Defendant attempted to flee by driving over a median and only stopped when an officer pointed a pistol at him.
As we have previously explained, in satisfying the co-conspirator exception to the hearsay rule, "[t]he State's burden of proof [is] only to procure evidence sufficient to permit, but not compel the jury to find a conspiracy." State v. Turner , 98 N.C. App. 442, 446, 391 S.E.2d 524, 526 (1990). The facts set forth above are sufficient to prove a prima facie case that Defendant and Potter were participants in a conspiracy to sell heroin.
State v. Collins , 81 N.C. App. 346, 344 S.E.2d 310 (1986), appeal dismissed , 318 N.C. 418, 349 S.E.2d 601 (1986), provides an analogous illustration of the coconspirator exception. In that case, an SBI agent used a confidential informant to arrange a drug transaction with Cara Lipford. Officers observed a light blue pickup truck drop off Grant Bowers outside of a fast food restaurant. The agent and the informant then picked up Bowers and drove into the restaurant's parking lot. Ten minutes later, a light blue pickup truck parked next to the agent. Lipford climbed out of the truck and into the agent's vehicle. The agent could not positively identify the driver of the truck, but he observed that the driver was a male with dark hair and a yellow baseball cap. The agent told Lipford that he wanted one-and-a-half ounces of cocaine. Lipford then left the agent's vehicle and got back into the truck. A few minutes later, she got back into the vehicle with the agent, who then gave her $2,850 with the understanding that cocaine would be delivered to him. Lipford left in the truck and did not come back with any cocaine. Several hours after the truck left the restaurant, officers observed it parked at the home of the defendant, Wallace Christopher Collins. They also saw the defendant-who met the description of the man who had driven to the restaurant earlier-driving the truck later that day. Id. at 347-48, 344 S.E.2d at 312.
We found these circumstances sufficient to prove a prima facie case of conspiracy, explaining as follows:
[The agent] went to the restaurant to make a drug contact. A truck similar to one later identified as belonging to defendant's brother and driven by defendant dropped off Bowers. Rather than enter the restaurant or go about any other business, Bowers waited and was picked up by [the agent], indicating a prior arrangement. [The agent] testified without objection that Bowers said "Cara and Chris" dropped him off. The pickup then returned and pulled up immediately next to [the agent's] car though the parking lot was not crowded, again indicating a prior arrangement. Lipford entered [the agent's] car and a drug deal was discussed. Only after Lipford had gone back to the driver of the truck and returned to [the agent's] car was the deal with [the agent] finalized and the money handed over.
This evidence, that the meeting with Bowers and Lipford was arranged in advance and that the drug deal was not finalized until Lipford had gone back to the truck, sufficed to establish the participation of the driver of the truck (who came to the restaurant twice) in whatever transaction was arranged. There was sufficient evidence that defendant was the driver in the testimony that "Chris" dropped Bowers off, the match of the yellow baseball cap, and the facts that the truck was registered to defendant's brother, defendant was driving it six hours later and it was seen parked at his home.
Id. at 350-51, 344 S.E.2d at 314.
The present case is similar to Collins but also includes the additional facts that Sgt. Fortson witnessed Defendant hand something to Potter just prior to her exiting Defendant's vehicle and giving Sgt. Fortson 3.5 grams of heroin in exchange for cash. Here, given the evidence showing that Defendant was indeed involved in the sale of heroin to Sgt. Fortson and that "[i]n establishing the prima facie case, the State is granted wide latitude, and the evidence is viewed in a light most favorable to the State[,]" Valentine , 357 N.C. at 521, 591 S.E.2d at 854 (citation omitted), we conclude that the trial court did not err by admitting Potter's hearsay statements contained in the video.
Finally, we note that it appears the judgment contains a clerical error in that Defendant was charged with-and entered an Alford plea to-the offense of conspiracy to possess with intent to sell or deliver heroin, but the judgment incorrectly lists the offense as "Conspire PWISD Cocaine." Accordingly, we remand for correction of this clerical error. See State v. Smith , 188 N.C. App. 842, 845, 656 S.E.2d 695, 696 (2008) ("When, on appeal, a clerical error is discovered in the trial court's judgment or order, it is appropriate to remand the case to the trial court for correction because of the importance that the record speak the truth." (citation and quotation marks omitted)).
Conclusion
For the reasons stated above, we conclude that the trial court did not err in denying Defendant's motion to suppress.
AFFIRMED; REMANDED FOR CORRECTION OF CLERICAL ERROR.
Report per Rule 30(e).
Judges BRYANT and ZACHARY concur.