STATE OF NORTH CAROLINA v. JAMES HUBERT AUTRY, CARLOS TYRONE DICKSON, PRESTON COOKE, TERESA ANN OLIPHANT, AND JANICE DENISE OLIPHANT

No. 9026SC428

(Filed 15 January 1991)

1. **Criminal Law § 374 (NCI4th)— limiting instruction—no expression of opinion**

   The trial judge did not express an opinion to the jury that cocaine found on a kitchen table either belonged to defendant or no one when he instructed the jury that testimony by a forensic chemist concerning cocaine found by officers on a downstairs kitchen table could only be considered in determining the guilt or innocence of defendant and could not be considered in determining the guilt or innocence of two codefendants who were upstairs at the time of the search.

   **Am Jur 2d, Drugs, Narcotics, and Poisons § 44.**

2. **Narcotics § 4.3 (NCI3d)— constructive possession—intent to sell—sufficiency of evidence**

   There was sufficient evidence to establish that defendant had constructive possession of .88 grams of cocaine found on a kitchen table on premises controlled by others and that he had the intent to sell or deliver the cocaine where it tended to show that defendant was standing only a few feet from the cocaine; two other persons were in the kitchen; the table was surrounded by chairs, one of which was turned sideways from the table and tilted toward defendant; a leather jacket was hanging on the back of the chair; a pistol, four packages of powder containing the cocaine, and forty-seven dollars in cash were on the table; and defendant told officers that the jacket and the cash belonged to him.

   **Am Jur 2d, Drugs, Narcotics, and Poisons § 47.**

   **Conviction of possession of illicit drugs found in premises of which defendant was in non-exclusive possession. 56 ALR3d 948.**

STATE v. AUTRY

[101 N.C. App. 245 (1991)]

3. Narcotics § 4.4 (NCI3d) — constructive possession — acting in concert — insufficiency of evidence

The State's evidence was insufficient to support defendant's conviction of trafficking in cocaine under the theory of constructive possession or under the theory of acting in concert where it tended to show only that two other persons were found in an upstairs bedroom with 34 grams of cocaine and drug paraphernalia, defendant was found in a landing or hallway leading to the bedroom, and defendant had no control over the premises.

Am Jur 2d, Drugs, Narcotics, and Poisons § 47.

Conviction of possession of illicit drugs found in premises of which defendant was in non-exclusive possession. 56 ALR3d 948.

APPEAL by defendants Autry and Dickson from judgments entered 11 October 1989 in MECKLENBURG County Superior Court by *Judge John M. Gardner.* Heard in the Court of Appeals 14 November 1990.

*Lacy H. Thornburg, Attorney General, by LaVee Hamer Jackson, Assistant Attorney General, for the State.*

*Susan J. Weigand for defendant-appellant Autry.*

*Isabel Scott Day, Public Defender, by Marc D. Towler, Assistant Public Defender, for defendant-appellant Dickson*

GREENE, Judge.

Defendant Autry was charged with two counts of trafficking in cocaine and one count of possession with intent to sell or deliver cocaine. The two counts of trafficking were dismissed at the close of the State's evidence, and a jury returned a verdict of guilty of possession with intent to sell or deliver cocaine. Autry appeals from a judgment entered 11 October 1989 sentencing him to ten years imprisonment. Defendant Dickson was charged with two counts of trafficking in cocaine. The jury returned a verdict of guilty of one count. Dickson appeals from a judgment entered 11 October 1989 sentencing him to fifteen years imprisonment.

The State's evidence tends to show that at approximately 11:55 p.m. on 20 March 1989, a vice squad team of fourteen officers

STATE v. AUTRY

[101 N.C. App. 245 (1991)]

served a search warrant upon the residence of Teresa and Janice Oliphant, located on East Sixth Street in Charlotte. After identifying themselves and announcing that they had a search warrant, the door was forced open and eleven officers entered the residence. Several officers proceeded upstairs while others went into the kitchen and living room areas downstairs.

Upstairs, the officers found two bedrooms, a bathroom and a small hallway or landing. They saw Dickson midway between a door leading to one of the bedrooms and the door to the bathroom. One officer searched Dickson, finding nothing, while another entered one of the bedrooms. In the bedroom the officer found Janice and Teresa Oliphant sitting on the bed. Also on the bed were two bags containing a total of 20.8 grams of cocaine. The officer also found in the bedroom a plate containing 13.3 grams of cocaine, scales, a spoon, a sifter, plastic sandwich bags, and a container of Inositol. An additional one-tenth gram of cocaine was found on Janice Oliphant's person during a search. Dickson and the Oliphants were arrested.

Downstairs, officers entered the kitchen and found a table surrounded by several chairs. On the table were a .25-caliber semi-automatic pistol, $47.00 in cash, and four packages containing a total of .88 grams of cocaine. A leather jacket was hanging on the back of one of the chairs. Defendant Autry was first observed standing at a kitchen counter within arm's length of the chair with the jacket hanging on it. There were two other men in the kitchen, one of whom ran out the back door and was later apprehended and returned to the house. One of the officers told Autry to leave. He started to leave, but then pointed at the chair and asked, "Can I get my jacket?" The officer took the jacket from the chair, patted it down, and then handed it to Autry. Autry then pointed at the table and asked, "Well, can I get my money, too?" Autry was then arrested.

At trial, the State introduced the testimony of an expert in forensic chemistry, who testified that the .88 grams of "white powder" found in the kitchen on the night of the arrests contained cocaine. During this testimony, defendant Dickson requested a limiting instruction to the jury on the grounds that the cocaine found in the kitchen was not related to the case against Dickson. The court instructed the jury as follows:

Ladies and gentlemen of the jury, I instruct you that you may consider the testimony of this witness, that is the testimony of Ms. Mills, only in determining the guilt or innocence of the defendant James Hubert Autry of the charge of felonious possession with intent to sell or deliver controlled substance, to wit, cocaine, as alleged in the first count of the indictment, Case Number 89CRS18863.

You may not consider this evidence in any way in determining the guilt of [sic] innocence of Mr. Autry as to the remaining two charges in that indictment, nor may you consider this evidence in any way in determining the guilt or innocence of the defendant Janice Denise Oliphant as to any charges against her, or the guilt or innocence of the defendant Carlos Dickson as to any charges against him.

Defendant Dickson presented the testimony of three witnesses. Diane Guy, Dickson's girlfriend, testified that Dickson was living with her on North Davidson Street. She also stated that Dickson's daughter, Tamara Oliphant, the niece of Janice and Teresa Oliphant, was also staying with her and Dickson because Tamara had been suspended from school and her mother was in the hospital. Guy testified that Dickson had gone to sleep around 9:30 p.m., but that she woke him at approximately 11:15 p.m. and asked him to go out and get her some cigarettes. Before leaving, Dickson told Guy that he was going to go to Janice and Teresa Oliphant's home to arrange a ride to school for his daughter the next morning.

The principal of Pinewood Elementary School testified that Tamara Oliphant had been suspended from school during the spring of 1989, and that he had met with Dickson about getting Tamara enrolled back in school, though he could not remember the exact day of the meeting.

Dickson's third witness, Charles Barber, testified that he ran into Dickson behind Dickson's house a little after 11:00 p.m. on the evening of 20 March 1989. Barber stated that Dickson asked him to walk to the store with him, and that Dickson explained that he needed to first stop by the Oliphant home to arrange a ride for his daughter for the next morning. They had been in the house two or three minutes when the police arrived.

No evidence was presented by the other defendants.

STATE v. AUTRY

[101 N.C. App. 245 (1991)]

The issues are: (I) whether the trial court erred in the trial of Autry in that (A) the limiting instruction to the jury regarding the testimony of the State's expert in forensic chemistry was an impermissible expression of opinion, and (B) there was insufficient evidence to support a conviction based upon a theory of constructive possession of cocaine; and (II) whether the trial court erred in the trial of Dickson in that there was insufficient evidence to support a conviction based upon a theory of either constructive possession of cocaine, or acting in concert to traffic in cocaine.

## I. AUTRY

Defendant Autry argues that the trial court's instruction to the jury concerning the testimony of the State's expert in forensic chemistry constituted an improper and prejudicial expression of opinion by the court, and that the court erred in denying his motion to dismiss for insufficiency of the evidence.

### A

[1] From the trial court's instruction to the jury, defendant Autry contends that the court expressed an opinion to the jury that the cocaine found on the kitchen table either belonged to Autry or to no one. As a statutory basis for his argument, Autry asserts N.C.G.S. § 15A-1232 (1988), which provides that "[i]n instructing the jury, the judge shall not express an opinion as to whether or not a fact has been proved . . . ."

When two or more defendants or two or more offenses are tried jointly, it is logical that certain evidence may be admissible only as to one defendant or as to one charge. Indeed, our rules of evidence have anticipated and addressed these problems by providing:

When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

N.C.R. Evid. 105 (1988). In this case, the trial court gave the instruction to the jury pursuant to a request from defendant Dickson. For several reasons, we find no error.

First, the record indicates that, including defendant Autry, there were nine persons present on the premises the night of

STATE v. AUTRY

[101 N.C. App. 245 (1991)]

Autry's arrest, two of whom were in the kitchen with Autry where the cocaine was found. Though the court instructed the jury that the chemist's testimony regarding the identity of the "powder" found on the kitchen table was not to be considered in the case against defendant Janice Oliphant or defendant Dickson, we are not persuaded that the jury could have interpreted the court's limiting instruction as an expression of the court's opinion that the cocaine could not belong to the other two persons in the kitchen with Autry, or to anyone else in the house, or to anyone else who may have recently been in the house, or, as argued by defendant Autry, "that the cocaine on the kitchen table belonged either to Mr. Autry or it belonged to no one."

Second, any potential for such an interpretation by the jury was cured when in its final jury instructions the trial court stated:

The law requires the presiding judge to be impartial. You're not to draw any inference from any ruling that I've made, or any inflection in my voice or expression on my face, or any question I may have asked a witness, or anything else I may have said or done during the course of this trial, that I have an opinion or have intimated an opinion, as to whether any part of the evidence should be believed or disbelieved, as to whether any fact has or has not been proved, or as to what your findings ought to be.

Third, in its final jury instructions regarding the charges against defendant Autry, the court instructed the jury as follows:

In deciding whether the State has proved the defendant guilty of this offense beyond a reasonable doubt, the offense as hereafter defined in these instructions, you may consider only the following evidence: State's Exhibits Number One, Number Two and Number Three, and the testimony of . . . Mills. . . .

Exhibits one, two and three are the gun, the ammunition magazine, and the four bags of cocaine, respectively, found on the kitchen table. Mills is the State's expert in forensic chemistry whose testimony prompted defendant Dickson to request the limiting instruction at issue. However, in instructing the jury as to the charges against defendants Dickson and Janice Oliphant, the court instructed that in deciding whether they possessed cocaine in an amount of twenty-eight grams or more but less than 200 grams, the jury could "only consider the evidence concerning the weight of the

STATE v. AUTRY

[101 N.C. App. 245 (1991)]

substances found on the plate and in the two bags on the bed in the upstairs bedroom . . ." and that they could not "consider any evidence as to the weight of any other substance found on the premises or on any person in the premises." The effect of this instruction was the same as the limiting instruction given during the trial, i.e., that the evidence of the cocaine found downstairs on the kitchen table was to be considered only in the case of defendant Autry. The transcript indicates, however, that Autry specifically informed the court that he had no objection to these final jury instructions. *See State v. Ayers*, 92 N.C. App. 364, 374 S.E.2d 428 (1988) (N.C.R. Civ. P. 10(b)(2), requiring objection to jury charge before jury retires to consider its verdict in order to assign error to the charge on appeal, is mandatory and not merely directory).

For these reasons we find no error in the court's limiting instruction to the jury concerning the testimony of the State's expert in forensic chemistry.

B

[2] Defendant Autry next argues that the trial court erred by denying his motion to dismiss the charge of possession with intent to sell or deliver cocaine, made at the close of the State's evidence and at the close of all the evidence, upon the grounds that there was insufficient evidence to establish that Autry had constructive possession of cocaine, or that he intended to sell or deliver cocaine.

In ruling upon a motion to dismiss, the trial court must examine the evidence in the light most favorable to the state, giving the state the benefit of all reasonable inferences which may be drawn from the evidence. *State v. Sanders*, 95 N.C. App. 494, 504, 383 S.E.2d 409, 415, *disc. rev. denied*, 325 N.C. 712, 388 S.E.2d 470 (1989). The court must determine whether there is substantial evidence of each essential element of the crime charged, and if so, the motion must be denied and the case submitted to the jury. *State v. Styles*, 93 N.C. App. 596, 602, 379 S.E.2d 255, 260 (1989). "'Substantial evidence' is that amount of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Cox*, 303 N.C. 75, 87, 277 S.E.2d 376, 384 (1981).

Constructive possession of a substance applies where the defendant "has both the power and intent to control its disposition or use." *State v. Harvey*, 281 N.C. 1, 12, 187 S.E.2d 706, 714 (1972).

When the substance is found on premises under the exclusive control of the defendant, this fact alone may support an inference of constructive possession. *State v. Givens*, 95 N.C. App. 72, 76, 381 S.E.2d 869, 871 (1989). If the defendant's possession over the premises is nonexclusive, constructive possession may not be inferred without other incriminating circumstances. *Id.*

In the present case, there was no evidence that defendant Autry had either exclusive or nonexclusive control or possession over the premises. Rather the evidence indicates that the premises were under the control of the Oliphants. We therefore determine whether Autry had the "power and intent" to control the disposition or use of the cocaine found in the kitchen of the premises. Since the cocaine was found on a table a few feet away from Autry, he had the "power" to control its disposition. Therefore, the determinative question is whether Autry had the "intent" to control it.

Intent is defined as a "[d]esign, resolve, or determination with which a person acts." Black's 727 (5th ed. 1979). "Intent is a mental attitude which seldom can be proved by direct evidence, but must ordinarily be proved by circumstances from which it can be inferred." *State v. Kendrick*, 9 N.C. App. 688, 691, 177 S.E.2d 345, 347 (1970).

The circumstances established by the State's evidence in this case indicate that defendant Autry was found standing with two other persons in a kitchen measuring approximately six feet by eight feet. On one wall of the kitchen there was a table surrounded by several chairs. One chair was turned sideways from the table, and tilted toward Autry. A leather jacket was hanging on the back of the chair. Autry was standing within arm's reach of the chair, and told a police officer that the jacket was his. On the table were a .25-caliber semi-automatic pistol, four packages of powder containing cocaine, and $47.00 in cash. Autry informed the police that the $47.00 belonged to him as well. Thus, of the four items on or near the table, those being the jacket, the cash, the pistol and the cocaine, Autry claimed ownership of two items.

Giving the State the benefit of all reasonable inferences which may be drawn from the evidence, the evidence is sufficient for a reasonable mind to infer and conclude from the circumstances that Autry had the determination or intent to exercise control over the cocaine found on the kitchen table and, therefore, that

STATE v. AUTRY

[101 N.C. App. 245 (1991)]

Autry constructively possessed the cocaine. Accordingly, we find substantial evidence of the essential element of possession of cocaine.

Furthermore, the fact that the cocaine was out on the table in plain view, that two other persons were with Autry in the kitchen, that while there was a total of only .88 grams of cocaine it was distributed among four separate, small packages, and that an amount of cash was found alongside the cocaine on the table, all present circumstances from which a reasonable mind may infer that Autry intended to sell or distribute the cocaine. *See State v. Williams*, 71 N.C. App. 136, 321 S.E.2d 561 (1984) (method of packaging may constitute evidence from which a jury may infer intent to distribute); *State v. Roseboro*, 55 N.C. App. 205, 284 S.E.2d 725 (1981), *disc. rev. denied, appeal dismissed*, 305 N.C. 155, 289 S.E.2d 566 (1982) (location and packaging of drugs relevant to question of intent to sell). We therefore find substantial evidence, when considered in a light most favorable to the State, that Autry possessed cocaine with the intent to sell or deliver.

Accordingly, the trial court did not err by denying Autry's motion to dismiss at the close of the State's evidence.

## II. DICKSON

[3] Defendant Dickson argues that the trial court erred in denying his motion to dismiss because there was insufficient evidence to support his conviction under a theory of constructive possession.

In defendant Dickson's case, there was no evidence that he actually possessed cocaine, or that he had either exclusive or nonexclusive control over the premises. We therefore determine whether Dickson had "both the power and intent" to control the disposition or use of cocaine. *Harvey.*

The State's evidence indicates that Dickson was found upstairs standing in a small hallway or landing. Opening into this hallway was a bedroom where the Oliphants were found along with a total of approximately thirty-four grams of cocaine and paraphernalia. Another bedroom and a bathroom also opened into the hallway.

This court has held that the mere presence in a room where drugs are located does not itself support an inference of constructive possession. *State v. James*, 81 N.C. App. 91, 344 S.E.2d 77 (1986). However, in the present case the State's evidence does not even place Dickson in the same room with the cocaine. Nor

is there any other evidence to establish any link between Dickson and the cocaine. We therefore find no substantial evidence that Dickson possessed cocaine, an essential element to the offense of trafficking by possession.

Since the jury was also instructed on the theory of acting in concert, we also address the issue of whether there was evidence to support a conviction under that theory. "When the State has established . . . that a defendant was present while a trafficking offense occurred and that he acted in concert with others to commit the offense pursuant to a common plan or purpose, it is not necessary to invoke the doctrine of constructive possession." *State v. Diaz*, 317 N.C. 545, 552, 346 S.E.2d 488, 493 (1986). The defendant need not do an act constituting a part of a crime to be convicted of the crime under the theory of acting in concert, but "it is nevertheless necessary that there be sufficient evidence to show he is acting together with another or others pursuant to a common plan or purpose to commit the crime." *State v. Forney*, 310 N.C. 126, 134, 310 S.E.2d 20, 25 (1984).

In reviewing the record, we find no evidence to show that defendant Dickson was acting pursuant to any common plan or purpose with the Oliphants to traffic in cocaine. There is therefore no evidence to support a conviction based on a theory of acting in concert.

Accordingly, the trial court erred in denying defendant Dickson's motion to dismiss the case against him.

No error in the case of defendant Autry.

Reversed in the case of defendant Dickson.

Judges PHILLIPS and ORR concur.