STATE OF NORTH CAROLINA v. OTIS REGINALD LYONS

No. 9014SC490

(Filed 19 March 1991)

1. Courts § 83 (NCI4th); Criminal Law § 197 (NCI4th)— waiver of statutory speedy trial—overruling of another judge—dismissal not prejudicial

The trial court was bound by another superior court judge's ruling that defendant had waived his right to a statutory speedy trial, and the trial court therefore could not dismiss the case, with or without prejudice, on that basis, even if the Speedy Trial Act had not been repealed; however, since defendant was re-indicted on the same charges in his original indictment,

STATE v. LYONS

[102 N.C. App. 174 (1991)]

he was not harmed by the dismissal without prejudice on statutory speedy trial grounds because, based on the original judge's ruling, defendant was not entitled to a dismissal at all on that basis.

**Am Jur 2d, Criminal Law § 866.**

**Waiver or loss of accused's right to speedy trial. 57 ALR2d 302.**

2. **Conspiracy § 32 (NCI4th); Assault and Battery § 85 (NCI4th) — sufficiency of evidence of intent to kill**

There was sufficient evidence of a specific intent to kill so that the trial court did not err in denying defendant's motion to dismiss conspiracy and secret assault charges where the evidence tended to show that defendant first confronted the victim, cursed him, pointed a gun at his head, and slapped him because the victim was standing too close to the road when defendant drove past; the victim did not strike defendant; a few minutes later there was a second confrontation during which the victim ripped defendant's clothes and bloodied his face and after which defendant threatened the victim; and a few minutes after the second confrontation, defendant and two of his companions ambushed the victim and his companions, shooting at them while hiding in bushes.

**Am Jur 2d, Assault and Battery § 13; Homicide §§ 570, 573, 574, 578.**

3. **Conspiracy § 32 (NCI4th) — conspiracy to commit felonious assault — injury — sufficiency of evidence**

Evidence was sufficient to show that defendant conspired with two others to commit the offense of assault with a deadly weapon with intent to kill inflicting serious bodily injury where it tended to show that defendant told the victim he was going to "burn" him; a companion later approached defendant's car and told him "they" were coming and that "we're fixing to get them"; shortly afterward defendant and two companions ran together into the bushes; and more than two guns were fired at the victim and his companion.

**Am Jur 2d, Assault and Battery § 11.**

**4. Assault and Battery § 86 (NCI4th) — secret assault — disjunctive instruction — error**

Defendant is entitled to a new trial on the charge of secret assault since the indictment charged that defendant committed the crime "upon Douglas Jones *and* Preston Jones," but the trial court instructed that the jury could return a guilty verdict if it found that defendant committed the crime against one *and/or* the other, since it could not be determined if all jurors found defendant assaulted one victim, all found he assaulted the other victim, all found both offenses, or some found one offense while some found the other offense.

**Am Jur 2d, Assault and Battery § 107; Homicide § 581; Trial § 628.**

Judge COZORT concurring in part and dissenting in part.

APPEAL by defendant from judgment entered 6 December 1989 in DURHAM County Superior Court by *Judge Orlando F. Hudson.* Heard in the Court of Appeals 16 January 1991.

*Lacy H. Thornburg, Attorney General, by Charles J. Murray, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by M. Patricia DeVine, Assistant Appellate Defender, for defendant-appellant.*

GREENE, Judge.

On 27 November 1989, defendant was tried on charges of malicious assault in a secret manner with a deadly weapon with intent to kill, assault with a deadly weapon, conspiracy to commit the offense of assault with a deadly weapon with intent to kill inflicting serious injury, and two counts of assault with a deadly weapon with intent to kill inflicting serious injury. The jury returned verdicts of guilty of all charges except the two counts of assault with a deadly weapon with intent to kill inflicting serious injury and on these two counts defendant was found not guilty. The trial court imposed a sentence of twenty years for secret assault. The other assault charge and the conspiracy charge were consolidated and the court imposed a sentence of ten years to run at the expiration of the twenty-year sentence. Defendant appeals.

Pretrial Procedure

Defendant was arrested on 19 March 1989, and first indicted on 1 May 1989. On 19 July 1989, and upon defendant's motion for a speedy trial under the Speedy Trial Act, former N.C.G.S. § 15A-701 *et seq.*, Judge Howard E. Manning issued an "Order for Prompt Trial," providing that defendant's case be brought to trial on or before 1 September 1989 or in the alternative that the case be dismissed. On 31 August 1989, defendant and the State agreed to continue the case to 5 September 1989 in order to start the case on the Tuesday after a three-day holiday. Judge Joe Freeman Britt allowed the continuance. On 5 September 1989, before Judge Orlando F. Hudson, the State moved to continue the case to 3 October 1989. The State also moved to join two co-defendants with defendant's trial. Judge Hudson allowed joinder, and further ruled that by consenting to a continuance on 31 August 1989 defendant "waived any rights and protection under the order of July 19, 1989, requiring that this case be tried by September 1, 1989" and that "the defendant has waived any right to a speedy or prompt trial on the trial of these cases." Defendant excepted to this ruling. On 2 October 1989, before Judge Britt, defendant moved under the Speedy Trial Act to dismiss the case for denial of a speedy trial. Defendant's motion asserted in part:

> 6. That the Defendant and counsel excepted to the ruling of Judge Hudson. The case was set to be brought on before Judge Britt on October 2, 1989.

> 7. That the continuance granted by Judge Hudson was in violation of the Defendant['] rights to a speedy trial under the Constitution of the United States, the Constitution of the State of North Carolina, and was in direct and specific contravention of the Order issued by Judge Howard E. Manning, Jr., on July 19, 1989, as modified with the consent of the Defendant to allow trial commence on or before September 5, 1989.

Judge Britt dismissed the case without prejudice and new indictments were returned on 16 October 1989 charging defendant with the same offenses charged in the original indictments.

TRIAL

The evidence introduced by the State at trial tends to show that on the evening of 19 March 1989, one Danny McKay was

standing outside a nightclub with a "fraternity brother" when a car going past nearly hit him. The car stopped and defendant got out of the car. Defendant approached McKay and told him to "get the fuck out of the street." Defendant then "pointed his hand in my fraternity brother's face and then at that point my fraternity brother knocked his hand out of his face and then [defendant] reached in his car and told his partner to give him the gun." A "very large handgun" was handed to defendant from inside the car. "He put it to my head and he said, now, what's up, like that and then like I didn't say nothing . . . and after that, he hit me upside my head. He slapped me with the opposite hand he had the gun in." Defendant then got back into his car and drove away. McKay went back inside the club and told off-duty police officers, who were working as security officers in the club at the time, what had happened outside.

Ten to fifteen minutes later, defendant entered the club. McKay approached defendant and asked defendant why he had pulled a gun on him. "[Defendant] said get the fuck out of my face and I struck him and hit him." McKay and defendant began fighting. The fight was broken apart and defendant was taken outside by the security guards while McKay was retained inside the club with his fraternity brothers. While one of the security guards was questioning defendant about the fight, defendant pointed at McKay and said, "That's okay, wait, I'm going to burn you; I'm going to burn you." Another witness testified that she heard defendant say, "I'm going to get you, man, I'm going to get you. I want you; I'm going to get you." The guards kept McKay and his fraternity brothers at the club until defendant had time to leave. McKay did not see defendant again that night.

A few minutes after defendant left the club, approximately ten fraternity brothers, including McKay, started walking down the street away from the club. Suddenly, they heard shots being fired. Though the number of shots varied from witness to witness, it appears from the testimony that two to six shots were fired. McKay was not hit. However, two of the fraternity brothers, Douglas Jones and Preston Jones, were wounded and later recovered.

Defendant's girlfriend, Lynette Osborne, testified that she and a friend, Toni Lowery, were standing outside when defendant exited the club after his fight with McKay. Defendant's friends, Tim Little and Wallace Daye, also appeared outside the club about that time.

Daye went into the club, then back outside to defendant and said, "I seen 'em ... I seen who they is." Osborne, Lowery and defendant then walked to the parking lot and got in defendant's car. A few minutes later Daye approached the car, opened the car door and said, "Here they come Bop (defendant's nickname), we're fixing to get them." Osborne saw Daye loading a gun. Osborne jumped from the car and saw Little hiding some distance away. Little was also holding a gun. Osborne testified that Little fired his gun twice and Daye fired once.

Another witness, Tonya Weaver, testified that she was at the club that night. She and a friend were walking a short distance ahead of the fraternity brothers as they left the club. Weaver saw defendant, Little and Daye running from the parking lot "[a]nd they ran past me and [defendant] brisked me." Weaver also saw a silver handle, which appeared to her to be a gun handle, sticking out of defendant's jacket pocket. Defendant, Little and Daye ran into some bushes nearby. The fraternity brothers approached and "[t]hey walked right into the gunshots." Weaver heard approximately five gunshots. She was also able to see the flash from the guns as they fired, and testified that she knows more than two guns were being fired.

A police officer testified that he responded to a call reporting a disturbance at the club. After checking the gunshot victims, he was told by another officer that there was a car in the parking lot which was believed to be the car of the people who did the shooting. The officers checked the inside of the car and found two pieces of paper with defendant's name written on them. They also found a .45-caliber automatic handgun on the rear passenger floorboard.

Defendant offered evidence, including his own testimony, tending to show that McKay provoked the initial confrontation with defendant in the street in front of the club, though defendant admits he got a handgun from Daye who was in defendant's car. He also admits slapping McKay. After the first confrontation with McKay, defendant went somewhere else and had approximately nine mixed drinks and then returned to the club. He had two handguns in his car, his own and one belonging to Little. While defendant testified that he did not actually see who did the shooting, several of defendant's witnesses stated that Little and Daye fired the shots.

At the end of all the evidence, defendant's motion to dismiss the charges was denied.

---

The issues are: (I) whether the trial court erred by dismissing, without prejudice, the charges against defendant; (II) whether the trial court erred in denying defendant's motion to dismiss the charges of conspiracy and maliciously assaulting in a secret manner in that there was insufficient evidence of the essential element of specific intent to kill; (III) whether the trial court erred in denying defendant's motion to dismiss the conspiracy charge in that there was insufficient evidence of a conspiracy; and (IV) whether the trial court erred by instructing the jury that a verdict of guilty should be returned if the jury found that defendant maliciously assaulted in a secret manner "Preston Jones and/or Douglas Jones."

I

[1]  Defendant first argues that Judge Britt erred in dismissing without prejudice the charges against defendant. Defendant contends that under N.C.G.S. § 15A-703(a) (1988) of the Speedy Trial Act, the trial court must make findings of fact from which the trial court can conclude whether defendant's statutory right to a speedy trial has been violated. We agree with the State's assertion that the Speedy Trial Act was repealed 1 October 1989, the day before Judge Britt's ruling, and that the statutory mandates would appear to be irrelevant to this case. Without so deciding, however, we find the determinative issue to be whether Judge Britt's ruling has any effect in this case in light of Judge Hudson's earlier ruling that defendant had waived his right to a speedy trial.

Judge Hudson gave his ruling on 5 September 1989. The record indicates that defendant. excepted to Judge Hudson's ruling and that defendant thereby preserved the right to argue the validity of that ruling on appeal. However, rather than making a direct attack against Judge Hudson's ruling on this appeal, defendant made a collateral motion to dismiss on statutory speedy trial grounds before Judge Britt on 2 October 1989. The language of defendant's motion itself suggests that defendant was actually appealing Judge Hudson's ruling to Judge Britt by stating that defendant "excepted to the ruling of Judge Hudson" and that Judge Hudson had violated defendant's right to a speedy trial. Inherent in Judge Britt's order of dismissal on speedy trial grounds, even though the dismissal was without prejudice, is a finding by Judge Britt that defendant

had not waived his right to a statutory speedy trial. Thus, Judge Britt in effect overruled Judge Hudson on the question of whether defendant had a statutory right to a speedy trial. Judge Britt also in effect overruled Judge Hudson on the question of whether defendant was entitled to a dismissal under the Speedy Trial Act, be it with or without prejudice.

As a general rule, "one Superior Court judge may not modify, overrule, or change the judgment of another Superior Court judge previously made in the same action." *State v. Neas*, 278 N.C. 506, 510, 180 S.E.2d 12, 15 (1971). In *Neas*, our Supreme Court applied this rule and found the trial judge "correctly held that he was without authority to overrule the order denying defendant's motion to dismiss [on constitutional speedy trial grounds] which had been entered in this case by [an earlier judge]. . . ." *Id.* We apply the same rule in the present case and find that, under the circumstances presented in this case, Judge Britt was bound by Judge Hudson's ruling that defendant had waived his right to a statutory speedy trial and could not, therefore, dismiss the case, with or without prejudice, on that basis even if the Speedy Trial Act had not been repealed.

Since defendant was re-indicted on the same charges in his original indictment, we find defendant was not harmed by the dismissal without prejudice on statutory speedy trial grounds because based on Judge Hudson's ruling defendant was not entitled to a dismissal at all on that basis. Under Judge Hudson's order, finding defendant had waived his rights and granting the State a continuance, defendant would have been tried on 3 October 1989. Due to the erroneous dismissal without prejudice, defendant was actually tried on 27 November 1989. However, any prejudice to defendant which may be inferred from this delay was brought about by defendant himself when he moved for dismissal on statutory speedy trial grounds after Judge Hudson had already ruled defendant had waived those rights.

II

[2] Defendant next argues the State failed to produce evidence of a specific intent to kill on the part of defendant, and that since this specific intent is a necessary element of the conspiracy and secret assault charges, these charges should have been dismissed upon defendant's motion.

When considering a motion to dismiss, the trial court is concerned only with the sufficiency of the evidence to submit the case to the jury, and not with the weight of the evidence. *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980). Defendant's motion is considered in light of all the evidence introduced by the State as well as that introduced by the defendant. *State v. Perry*, 316 N.C. 87, 95, 340 S.E.2d 450, 456 (1986). The trial court must consider the evidence in the light most favorable to the State, and allow the State every reasonable inference which may be drawn from the evidence. *State v. Autry*, 101 N.C. App. 245, 251, 399 S.E.2d 357, 361 (1991). The court must determine whether there is substantial evidence, direct or circumstantial, of each element of the crime charged. *State v. Stephens*, 244 N.C. 380, 383, 93 S.E.2d 431, 433 (1956). Substantial evidence is that amount of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Autry* at 251, 399 S.E.2d at 361. The trial court need not determine the evidence excludes every reasonable hypothesis of innocence before denying the motion. *Powell* at 101, 261 S.E.2d at 118.

"A defendant's intent to kill may be inferred from the nature of the assault, the manner in which it was made, the conduct of the parties, and other relevant circumstances." *State v. James*, 321 N.C. 676, 688, 365 S.E.2d 579, 586 (1988). Here, the evidence indicates defendant first confronted McKay apparently because ·McKay was standing too close to the road when defendant drove past. For this apparent reason, defendant cursed McKay, pointed a gun at his head, and then slapped him. McKay did not strike defendant. A few minutes later defendant and McKay got into a fight inside the club. The evidence indicates, however, that during this second confrontation defendant's clothing was ripped and his face bloodied by McKay. After the fight was over, defendant told McKay he was going to "burn" him, and that "I want you; I'm going to get you." A few minutes later defendant was sitting in his car when Daye appeared and said, "Here they come . . . we're fixing to get them." Defendant, Daye and Little were then seen running into some bushes and defendant had what appeared to be a gun handle sticking out of his jacket pocket. Finally, moments later, muzzle flashes were seen coming from within the bushes, and were produced by "more than two guns."

The assault was in the form of an ambush. The victims "walked right into the gunshots." The nature and manner of the assault,

STATE v. LYONS

[102 N.C. App. 174 (1991)]

the conduct of the parties, and the other relevant circumstances summarized above, when considered in a light favorable to the State, constitute evidence from which a reasonable mind could infer that defendant harbored a specific intent to kill. We therefore find that there is substantial evidence of the element of intent to kill and that the trial court did not err in denying defendant's motion on that basis.

III

[3] Defendant next argues the trial court erred in denying his motion to dismiss because there was insufficient evidence that defendant conspired with Daye and Little to commit the offense of assault with a deadly weapon with intent to kill inflicting serious bodily injury. Specifically, defendant contends there was no evidence of an agreement or implied understanding between defendant, Daye and Little.

A conspiracy may be proved by direct or circumstantial evidence and is established by showing the existence of an express agreement or a mutual implied understanding between defendant and others to do an unlawful act or to do a lawful act by unlawful means. *State v. Collins*, 81 N.C. App. 346, 350, 344 S.E.2d 310, 313, *appeal dismissed*, 318 N.C. 418, 349 S.E.2d 601 (1986).

Here, defendant told McKay he was going to "burn" him. Daye later approached defendant's car and told him "they" were coming and that "we're fixing to get them." Shortly afterward defendant, Daye and Little ran together into the bushes and "more than two guns" were fired. We find this evidence sufficient for reasonable minds to conclude that at the very least, defendant, Daye and Little had a mutual implied agreement to commit the assaults. Thus we find substantial evidence of the necessary element of an agreement between defendant and the co-conspirators, and the trial court did not err in denying defendant's motion to dismiss on this basis.

IV

[4] Defendant's final argument is that the trial court erred in its jury instruction on the charge of secret assault. The indictment for this charge presents in part that defendant maliciously and in a secret manner committed assault and battery with a deadly weapon "upon Douglas Jones *and* Preston Jones . . ." (emphasis added). However, the court instructed the jury as follows:

Now, I charge for you to find the defendant guilty of malicious assault and battery in a secret manner with a deadly weapon with the intent to kill, the State must prove five things beyond a reasonable doubt.

First, that the defendant committed an assault and battery upon Douglas Jones *and/or* Preston Jones by intentionally shooting him with a handgun.

Second, that the defendant used a deadly weapon. A deadly weapon is a weapon which is likely to cause death or serious bodily injury. Once again, a handgun is a deadly weapon.

Third, that the defendant committed the assault and battery upon Douglas Jones *and/or* Preston Jones in a secret manner. The assault and battery would be in a secret manner if Douglas Jones *and/or* Preston Jones was unaware of the defendant's intent to commit the assault and battery until it was too late to defend himself.

Fourth, that the defendant had the intent to kill Douglas Jones *and/or* Preston Jones.

And fifth, that the defendant acted maliciously. That is with ill-will, hatred or animosity towards Douglas Jones *and/or* Preston Jones.

So I charge that if you find from the evidence beyond a reasonable doubt that on the alleged date the defendant, Otis Lyons, maliciously committed an assault and battery upon Douglas Jones *and/or* Preston Jones [it will be your] duty to return a verdict of guilty of malicious assault and battery in a secret manner with a deadly weapon with the intent to kill. . . .

(Emphases added.) Defendant argues his conviction under this disjunctive instruction was the result of an ambiguous verdict in that some jurors may have found defendant assaulted Douglas Jones while others may have found defendant assaulted Preston Jones.

*State v. Hartness*, 326 N.C. 561, 391 S.E.2d 177 (1990), and *State v. Diaz*, 317 N.C. 545, 346 S.E.2d 488 (1986), set forth the analysis to be used in determining whether a disjunctive jury instruction, as was used in this case, is fatally defective. If a single offense is submitted to the jury for its determination, but they are instructed disjunctively that they may return a verdict of guilty

STATE v. LYONS

[102 N.C. App. 174 (1991)]

of the single offense submitted if they find defendant committed either of two underlying acts, either of which in itself is a separate crime, then the instruction is fatally ambiguous because it is impossible to determine whether the jury unanimously found that defendant committed one particular offense. *Diaz* at 554, 346 S.E.2d at 494 (separate offenses of possession and transportation of drugs submitted disjunctively as basis for trafficking offense). However, if an offense is submitted to the jury and they are merely instructed disjunctively as to various alternative acts which will establish an element of the offense, the requirement of unanimity is satisfied. *Hartness* at 566, 391 S.E.2d at 180 (alternative acts submitted disjunctively as basis for establishing first element of offense of indecent liberties).

In the present case, the trial court instructed the jury disjunctively permitting consideration of two possible crimes for which defendant could be separately convicted and punished, i.e., secretly assaulting Douglas Jones and secretly assaulting Preston Jones. The jury was permitted to consider these separate crimes in determining whether defendant was guilty of a single crime of secret assault under N.C.G.S. § 14-31. Therefore, as in *Diaz*, the jury's verdict is fatally ambiguous because it cannot be determined whether all the jurors found defendant assaulted Douglas, all found he assaulted Preston, all found both offenses, or some found one offense while some found the other offense. *Diaz* at 554, 346 S.E.2d at 494. Therefore, a new trial is necessary on the charge of secret assault.

Secret assault—new trial.

Assault with a deadly weapon—no error.

Conspiracy—no error.

Judge PARKER concurs.

Judge COZORT concurs in part and dissents in part.

Judge COZORT concurring in part and dissenting in part.

I concur with that portion of the majority opinion which finds no error in the trial of the charges of assault with a deadly weapon

and conspiracy. I dissent, however, with the portion of the majority opinion which grants a new trial on the charge of secret assault.

I believe the majority errs in holding that a new trial is necessary on the charge of secret assault under the Supreme Court's ruling in *State v. Diaz*, 317 N.C. 545, 346 S.E.2d 488 (1986). Rather, I find this case is controlled by *State v. Hartness*, 326 N.C. 561, 391 S.E.2d 177 (1990). In *Hartness*, our Supreme Court was reviewing the defendant's conviction of taking indecent liberties with a minor. The defendant contended that the trial court erred by giving an instruction which allowed the jury to split its decision regarding which alleged immoral act by defendant against the minor constituted the offense, thereby rendering the verdict potentially nonunanimous. *Id.* at 563, 391 S.E.2d at 178. In finding no error in the judge's instruction, the Supreme Court stated:

> This Court in *Diaz* reversed a conviction for trafficking in marijuana on the grounds that it was obtained upon a fatally ambiguous disjunctive instruction. The jury had been instructed to return a guilty verdict if it found that defendant "knowingly possessed or knowingly transported marijuana." *Id.* at 553, 346 S.E.2d at 494. This Court noted that transportation and possession of marijuana "are separate trafficking offenses for which a defendant may be separately convicted and punished" and that by instructing the jury as he did, the trial judge "submitted two possible crimes to the jury." *Id.* at 554, 346 S.E.2d at 494. This Court found the instruction to be fatally ambiguous because it was impossible to determine whether all of the jurors found possession, all found transportation, or some found one and some the other.
>
> The reasoning in *Diaz* is misapplied in the present context. The risk of a nonunanimous verdict does not arise in cases such as the one at bar because the statute proscribing indecent liberties does not list, as elements of the offense, discrete criminal activities in the disjunctive in the same manner as does the trafficking statute. The trafficking statute at issue in *Diaz*, N.C.G.S. § 90-95(h)(1) (1985), enumerates the following proscribed activities: sale, manufacturing, delivery, transportation, and possession. Each is a discrete criminal offense. By contrast, N.C.G.S. § 14-202.1 proscribes simply "any immoral, improper, or indecent liberties." Even if we assume that some jurors found that one type of sexual conduct occurred and

others found that another transpired, the fact remains that the jury as a whole would unanimously find that there occurred sexual conduct within the ambit of "any immoral, improper, or indecent liberties." Such a finding would be sufficient to establish the first element of the crime charged.

*Id.* at 564-65, 391 S.E.2d at 179.

The Court further stated:

As the statute indicates, the crime of indecent liberties is a single offense which may be proved by evidence of the commission of any one of a number of acts. The evil the legislature sought to prevent in this context was the defendant's performance of any immoral, improper, or indecent act in the presence of a child "for the purpose of arousing or gratifying sexual desire." Defendant's purpose for committing such act is the gravamen of this offense; the particular act performed is immaterial.

*Id.* at 567, 391 S.E.2d at 180.

I find *Hartness* applicable to the present situation. Defendant commits the crime of secret assault, a single offense, by shooting at either Douglas Jones, Preston Jones, or both. The possibility that jurors may disagree upon which person defendant shot would not affect the unanimity of the jury's decision that the defendant committed the secret assault. I vote no error.