STATE OF NORTH CAROLINA v. RONALD McCLARY

No. COA02-504

(Filed 1 April 2003)

1. **Appeal and Error— preservation of issues—expert testimony—psychiatrist's report—motion in limine—failure to object at trial**

   Defendant did not preserve for appeal the issue of whether the trial court erred by allowing the State to use a psychiatrist's report and to question the chief of forensic psychiatry at Dorothea Dix Hospital (chief) about this report even though defendant's new legal counsel did not intend to rely on the report or to call the psychiatrist to testify as an expert witness, because: (1) although defendant made a pretrial motion to exclude evidence of the report, he did not object at the time the report first was discussed during the State's examination of the chief, nor did defendant object when the State inquired as to what the report indicated about defendant's mental state at the time of the shooting; (2) although defendant objected when the State asked whether the chief was able to form an opinion as to defendant's mental state at the time of the shooting, there is nothing in the record indicating that the grounds of the objection was the inadmissibility of the report; and (3) defendant failed to specifically and distinctly allege plain error.

STATE v. McCLARY

[157 N.C. App. 70 (2003)]

**2. Discovery— timing requirements—disclosure of statement on day of trial**

The trial court did not abuse its discretion in a first-degree murder case by denying defendant's motion to continue or in the alternative his motion to suppress evidence of his statement to a jail administrator even though the State failed to meet the discovery timing requirements in N.C.G.S. § 15A-903(a) by providing defendant with the statement on the day his case was called for trial, because: (1) a recess was ordered to allow defense counsel the opportunity to discuss the discovery with his client and defendant's psychiatric expert before proceeding with jury selection; (2) the State did not call the jail administrator as a witness until eighteen days after it disclosed the statement to defendant; (3) the jail administrator testified as a rebuttal witness in response to testimony from defendant's psychiatric expert which put defendant's capacity to form the requisite intent to kill at issue; and (4) the trial court found that the district attorney's office disclosed the statement as soon as it became aware of it and that the State did not engage in bad faith in failing to disclose the statement at an earlier time.

**3. Homicide— first-degree murder—motion to dismiss—sufficiency of evidence—intent to kill**

The trial court did not err by denying defendant's motion to dismiss the charge of first-degree murder based on alleged insufficient evidence of defendant's intent to kill, because: (1) the State presented testimony of several witnesses regarding the ill-will between defendant and the victim; (2) a witness testified that defendant told her he was going to shoot the victim and another witness testified that defendant stated he would rather see the victim dead; and (3) defendant shot the victim twice in the back as she tried to run away from him.

**4. Constitutional Law— effective assistance of counsel—expert opinion on defendant's mental state**

The trial court did not commit plain error in a first-degree murder case by allowing the chief of forensic psychiatry at Dorothea Dix Hospital (chief) to give his opinion as to defendant's mental state at the time of the shooting and defendant's sixth amendment right to effective assistance of counsel was not violated, because: (1) defendant placed his mental condition at issue first by moving to continue the trial due to his psychiatric

illness, and then by asserting the defense of diminished capacity and his inability to formulate the intent to kill; and (2) although the chief evaluated defendant by court order for the purpose of determining his capacity to proceed, his personal observations taken together with the other materials considered provided an adequate basis for his opinion that defendant was capable of forming the requisite intent to kill at the time of the shooting.

Appeal by the defendant from judgment entered 5 April 2001 by Judge Ronald L. Stephens in Alamance County Superior Court. Heard in the Court of Appeals 13 February 2003.

*Attorney General Roy Cooper, by Assistant Attorney General John G. Barnwell, for the State.*

*Miles & Montgomery, by Lisa Miles, for the defendant.*

STEELMAN, Judge.

Defendant was indicted for and found guilty of first degree murder by a jury. The trial court sentenced him to life imprisonment without parole. Defendant appeals his conviction for first degree murder.

The State's evidence at trial tended to show that on 29 April 1999, the defendant shot Mary Mitchell ("Mitchell") twice in the back. In the weeks prior to the shooting, Mitchell had obtained warrants against defendant for making harassing phone calls and for assault by pointing a gun. Defendant also had obtained warrants against Mitchell in March 1999 for unauthorized use of his automobile and for communicating threats.

One or two days before the shooting, Mitchell told the manager of the laundry where she worked that defendant "had threatened her and she had told the police." Otis Blackwell, Mitchell's father, testified that the week before she was killed, Mitchell had told him that defendant was harassing her. He further testified that two nights before her death, Mitchell stayed with him because defendant "had pulled a gun on her."

Brenda Henderson ("Henderson"), Mitchell's co-worker, testified that defendant told her the night before the shooting that he would "rather see her [Mitchell] dead than for anyone else [to have her]." She also testified that defendant had pulled a gun on Mitchell in the past. Angela Rogers ("Rogers"), a relative of defendant, testified that on the morning of 29 April 1999, defendant told her he was "at the end

of his rope" and "he was on his way over there to . . . shoot Mary [Mitchell]."

Officer Kevin Crowder ("Crowder") of the Burlington Police Department testified that about two hours after Mitchell was shot, defendant telephoned to turn himself in to police. Crowder testified that during the call, defendant stated that Mitchell, her father and a man associated with Mitchell known as "Hawk" all had threatened to kill him.

Defendant's forensic psychiatry expert, Dr. George Corvin ("Dr. Corvin"), testified during defendant's evidence that in his opinion, defendant's capacity to form the specific intent to kill was "substantially reduced" at the time of the murder. Dr. Corvin based this conclusion on interviews with defendant and previous psychiatric evaluations performed by other psychiatrists, including Dr. Gary Hoover ("Dr. Hoover") who had been retained by defendant's previous counsel.

Dr. Robert Rollins ("Dr. Rollins"), chief of forensic psychiatry at Dorothea Dix Hospital, evaluated defendant on 23 January 2001 pursuant to the trial court's order and subsequently "saw [defendant] approximately eleven times while he was [at Dorothea Dix] for brief to longer interviews." Dr. Rollins testified for the State on rebuttal that in his opinion, defendant's mental disorder would not have prevented him from forming the specific intent to kill. Dr. Rollins based his opinion on his own interviews of defendant, interviews by a psychologist and reports of previous psychiatric evaluations by Dr. Corvin and Dr. Hoover.

Also on rebuttal, Todd Davis ("Davis"), an Alamance County jail administrator, testified for the State that defendant voluntarily stated "I'm not trying to get out of my charges, because I'm guilty of killing my girlfriend. I did it and meant to. But I need medical treatment for my mental problem now. I cannot make it without help." Davis sent a letter detailing defendant's statement to the lead investigator, Sergeant Doug Murphy, but did not send it to the district attorney's office.

At defendant's first trial in May 2000, the trial court granted a motion to withdraw by defendant's original counsel and declared a mistrial. At defendant's second trial in March 2001, he made a pretrial motion *in limine* to exclude any reference to or questioning regarding a report of Dr. Hoover's psychiatric evaluation of defendant. The trial court ruled that whether Dr. Hoover's report

could be used by the State at trial was an evidentiary matter and would not be ruled upon pre-trial.

## I.

[1] Defendant first contends the trial court erred in allowing the State to use Dr. Hoover's report and to question Dr. Rollins about it. Specifically, defendant argues that the State should not have been permitted to use this evidence at trial because defendant's original counsel had voluntarily given the report to the State and his new legal counsel did not intend to rely on Dr. Hoover's report or to call him to testify as an expert witness.

A motion *in limine* will not preserve for appeal the issue of "the admissibility of evidence if the defendant fails to further object to that evidence *at the time it is offered* at trial. A criminal defendant is required to interpose at least a general objection to the evidence *at the time it is offered.*" *State v. Conaway*, 339 N.C. 487, 521, 453 S.E.2d 824, 845-46 (citations omitted) (emphasis added), *cert. denied*, 516 U.S. 884, 133 L. Ed. 2d 153 (1995); *Beaver v. Hampton*, 106 N.C. App. 172, 416 S.E.2d 8 (1992) (holding that plaintiffs failed to preserve for appeal the issue of the trial court's alleged error in denying their motion *in limine* to prohibit introduction of evidence where they failed to object when the evidence was introduced at trial and the trial judge did not conduct a full hearing of evidentiary matters underlying the motion), *modified on other grounds*, 333 N.C. 455, 427 S.E.2d 317 (1993). If defendant fails to object to the evidence at the time it is offered or otherwise to preserve the question for appeal, our review is limited to plain error. N.C.R. App. P. 10(c)(4) (2001). To receive plain error review, a defendant must "specifically and distinctly" allege plain error in his assignments of error, N.C.R. App. P. 10(c)(4), and a failure to do so results in waiver of plain error review. *State v. Gary*, 348 N.C. 510, 501 S.E.2d 57 (1998).

Defendant did not object at the time Dr. Hoover's report first was discussed during the State's examination of Dr. Rollins. Nor did defendant object when the State inquired as to what Dr. Hoover's report indicated about defendant's mental state at the time of the shooting. Defendant did object when the State asked whether Dr. Rollins was able to form an opinion as to defendant's mental state at the time of the shooting, but there is nothing in the record indicating that the grounds of the objection was the inadmissibility of Dr. Hoover's report. Defendant also failed to specifically and distinctly allege plain error. Therefore, we dismiss this assignment of error.

## II.

**[2]** Defendant next argues the trial court erred in denying his motion to continue or, in the alternative, his motion to suppress evidence of his statement to Davis.

N.C. Gen. Stat. § 15A-903(a)(2) (2001) requires the State to divulge any statement by defendant in its possession "no later than 12 o'clock noon, on Wednesday prior to the beginning of the week during which the case is calendared for trial." N.C. Gen. Stat. § 15A-910 (2001) gives the trial court discretion to apply several remedies in the case of failure to comply with discovery requirements, including a grant of continuance or recess or suppression of evidence not properly disclosed. It is within the trial court's sound discretion whether to impose sanctions for a failure to comply with discovery requirements, including whether to admit or exclude evidence, and the trial court's decision will not be reversed by this Court absent an abuse of discretion. *State v. Weeks*, 322 N.C. 152, 367 S.E.2d 895 (1988). An abuse of discretion results from a ruling so arbitrary that it could not have been the result of a reasoned decision or from a showing of bad faith by the State in its noncompliance. *State v. Nolen*, 144 N.C. App. 172, 550 S.E.2d 783, *appeal dismissed and cert. denied*, 354 N.C. 368, 557 S.E.2d 531 (2001).

The State did not meet the timing requirements in N.C. Gen. Stat. § 15A-903(a)(2) since it provided defendant with the statement on the day his case was called for trial, 12 March 2001. After hearing defendant's motions to suppress and continue, the trial court found that discovery had not been provided in a timely manner and ordered that the trial be recessed until 14 March 2001. This recess was ordered to allow defense counsel the opportunity to discuss the discovery with his client and defendant's psychiatric expert before proceeding with jury selection. The State did not call Davis as a witness until 18 days after it disclosed the statement to defendant. Davis testified as a rebuttal witness in response to testimony from defendant's psychiatric expert which put defendant's capacity to form the requisite intent to kill at issue. The trial court further found that the district attorney's office disclosed the statement as soon as it became aware of it and found that the State did not engage in bad faith in failing to disclose the statement at an earlier time. Based on the foregoing, we hold that the trial court did not abuse its discretion in denying defendant's motions and admitting his statement to Davis into evidence.

### III.

[3] Defendant next assigns as error the trial court's denial of his motion to dismiss for insufficient evidence of his intent to kill. When ruling on a motion to dismiss for insufficient evidence, the trial court must determine whether substantial evidence of each element of the crime charged has been presented by the State. *State v. Carr*, 122 N.C. App. 369, 470 S.E.2d 70 (1996). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980) (citation omitted). The trial court must view all evidence in the light most favorable to the State and draw all reasonable inferences in the State's favor. *State v. Patterson*, 335 N.C. 437, 439 S.E.2d 578 (1994).

First-degree murder is the unlawful killing of a human being with malice, premeditation and deliberation. N.C. Gen. Stat. § 14-17 (2001); *State v. Ruof*, 296 N.C. 623, 252 S.E.2d 720 (1979).

> Premeditation means thought beforehand for some length of time, however short. Deliberation means an intention to kill executed by one in a cool state of blood, in furtherance of a fixed design to gratify a feeling of revenge or to accomplish some unlawful purpose and not under the influence of a violent passion suddenly aroused by some lawful or just cause or legal provocation.

*Ruof*, 296 N.C. at 636, 252 S.E.2d at 728 (citations omitted). "Circumstances to consider in determining whether a killing was premeditated and deliberate include: the conduct and statements of the defendant before and after the killing, ill-will or previous difficulty between the parties, and evidence that the killing was done in a brutal manner." *State v. Coplen*, 138 N.C. App. 48, 59, 530 S.E.2d 313, 321 (citation omitted), *cert. denied*, 353 N.C. 677, 545 S.E.2d 438 (2000). "Since a specific intent to kill is a necessary constituent of the elements of premeditation and deliberation, proof of premeditation and deliberation is also proof of intent to kill." *State v. Lowery*, 309 N.C. 763, 768, 309 S.E.2d 232, 237 (1983) (citation omitted).

In this case, Mitchell and defendant had obtained warrants against each other, and the State presented testimony of several witnesses regarding the ill-will between Mitchell and defendant. Rogers testified that defendant told her he was going to shoot Mitchell, and Henderson testified defendant stated that he would rather see

Mitchell dead. Further, defendant shot Mitchell twice in the back as she tried to run away from him. This evidence, viewed in the light most favorable to the State, was sufficient to demonstrate defendant's premeditation and deliberation and, therefore, to show his intent to kill. We hold the trial court did not err in denying defendant's motion to dismiss for insufficient evidence.

### IV.

**[4]** Finally, defendant contends the trial court committed plain error in allowing Dr. Rollins to give his opinion as to defendant's mental state at the time of the shooting since the opinion exceeded the scope of his evaluation of defendant and was without proper foundation. Defendant further argues that allowing Dr. Rollins to give his opinion deprived him of his sixth amendment right to assistance of counsel, citing *Estelle v. Smith*, 451 U.S. 454, 68 L. Ed. 2d 359 (1981).

In *Estelle*, the defendant did not place his mental state at issue or otherwise present psychiatric evidence. *Id.* at 457 n.1, 468, 68 L. Ed. 2d at 365 n.1, 372. The trial court had ordered, *sua sponte*, a pre-trial psychiatric evaluation to determine defendant's capacity to stand trial. *Id.* at 456-57, 68 L. Ed. 2d at 365. The United States Supreme Court held that the defendant was denied his sixth amendment right to assistance of counsel when the State introduced the psychiatrist's testimony to show the defendant's future dangerousness because the defendant's counsel was not notified in advance that the evaluation would encompass that issue. *Id.* at 471, 68 L. Ed. 2d at 374. The *Estelle* Court reasoned that because the defendant's counsel did not have advance notice of the scope of the psychiatric evaluation, the defendant could not consult properly with his counsel regarding the decision to submit to the evaluation or the possible use of the results. *Id.* at 470-71, 68 L. Ed. 2d at 374.

In *State v. Huff*, 325 N.C. 1, 381 S.E.2d 635 (1989), *sentence vacated on other grounds*, 497 U.S. 1021, 111 L. Ed. 2d 777 (1990), our Supreme Court considered whether a defendant's sixth amendment right to effective assistance of counsel was violated by the admission of rebuttal testimony by the State's psychiatric expert who had performed an evaluation of the defendant pursuant to a court order. In *Huff*, the court relied upon the United States Supreme Court decision in *Buchanan v. Kentucky*, 483 U.S. 402, 97 L. Ed. 2d 336, *reh'g denied*, 483 U.S. 1044, 97 L. Ed. 2d 807 (1987). The defendant in *Buchanan* claimed his sixth amendment right to assistance of counsel had been denied because his counsel did not anticipate that the results of the

psychiatric examination requested by defendant would have been used at trial to rebut his affirmative defense of extreme emotional disturbance. *Buchanan*, 483 U.S. at 424, 97 L. Ed. 2d at 356. The *Buchanan* Court noted that the purpose of the sixth amendment is to protect a defendant's right to effective consultation with counsel, which is "based on counsel's being informed about the scope and nature of the proceeding." *Id.* at 424, 97 L. Ed. 2d at 357. However, the *Buchanan* Court found that the defendant's counsel was informed as to the scope and nature of the proceeding since he had placed the defendant's mental condition at issue by arguing the extreme emotional disturbance defense. *Id.* at 424-25, 97 L. Ed. 2d at 357. Counsel must have anticipated that the State would use psychiatric evidence of the defendant's mental condition to rebut this defense. *Id.* at 425, 97 L. Ed. 2d at 357. Therefore, the defendant's sixth amendment right to assistance of counsel had not been violated. *Id.*

Adopting the *Buchanan* rationale, the *Huff* Court stated that because the defendant placed his mental status at issue by arguing an insanity defense, " 'he would have to anticipate the use of psychological evidence by the prosecution in rebuttal.' " *Huff*, 325 N.C. at 49, 381 S.E.2d at 662 (*quoting Buchanan, supra,* 483 U.S. at 425, 97 L. Ed. 2d at 357). Our Supreme Court also noted that there was no contention that the defendant did not have the opportunity to confer with his counsel and to discuss whether to submit to an examination. *Id.* at 49, 381 S.E.2d at 662-63. *Huff* held that there was no violation of the defendant's right to effective assistance of counsel. *Id.* at 49, 381 S.E.2d at 663.

The present case is controlled by our Supreme Court's decision in *Huff*, and not by *Estelle*. Here, defendant filed a motion to continue the trial in this case on 17 January 2001 based on the results of a psychiatric examination by defendant's own expert, Dr. Corvin. This examination concluded that defendant suffered from "psychotic symptoms" and "major depression" and that his trial should be delayed for treatment of his psychiatric illness. The trial court found that this motion raised the issue of defendant's capacity to proceed and allowed the motion to continue. On its own motion, the trial court ordered defendant committed to Dorothea Dix Hospital for evaluation of his capacity to proceed. Defendant and his counsel were present during the trial court's consideration of the motion to continue and its order for commitment and did not enter any objection.

Defendant placed his mental condition at issue first by moving to continue the trial due to his psychiatric illness, and then by asserting

the defense of diminished capacity and his inability to formulate the intent to kill. Defendant submitted affidavits and presented expert psychiatric testimony on these issues to the trial court. Defendant submitted to the psychiatric examination ordered by the trial court and did not allege that he did not have an opportunity to consult with his counsel regarding the scope of the examination. Based on our Supreme Court's ruling in *Huff*, *supra*, we find that defendant's right to counsel was not affected by the admission of Dr. Rollins' testimony on rebuttal.

N.C. Gen. Stat. § 15A-1226 allows each party to "introduce rebuttal evidence concerning matters elicited in the evidence in chief of another party," N.C. Gen. Stat. § 15A-1226(a) (2001), and gives the trial court the discretion to allow "any party to introduce additional evidence at any time prior to the verdict." N.C. Gen. Stat. § 15A-1226(b); *see also State v. Johnston*, 344 N.C. 596, 605, 476 S.E.2d 289, 294 (1996) ("The State has the right to introduce evidence to rebut or explain evidence elicited by defendant. . . .") The trial court's decision to admit rebuttal evidence will not be reversed by this Court absent an abuse of discretion. *State v. Anthony*, 354 N.C. 372, 555 S.E.2d 557, *cert. denied*, 354 N.C. 575, 559 S.E.2d 184 (2001). Our review of the record reveals no such abuse of discretion where the defendant "opened the door" by introducing evidence on the issue of his capacity to formulate the intent to kill and had the opportunity to fully cross-examine and re-cross-examine Dr. Rollins.

As to defendant's contention that Dr. Rollins' opinion lacked proper foundation, we cannot agree. Defendant stipulated to Dr. Rollins' qualifications as a forensic psychiatrist. Dr. Rollins personally saw defendant approximately eleven times and reviewed psychiatric evaluations performed by other psychiatrists, including defendant's own experts. The opinions and evaluations of other doctors have been held to be a proper basis for an expert opinion under N.C. Gen. Stat. § 8C-1, Rule 703 (2001). *State v. Daniels*, 337 N.C. 243, 446 S.E.2d 298 (1994), *cert. denied*, 513 U.S. 1135, 130 L. Ed. 2d 895 (1995); *Donavant v. Hudspeth*, 318 N.C. 1, 347 S.E.2d 797 (1986); *State v. Wade*, 296 N.C. 454, 251 S.E.2d 407 (1979). Although Dr. Rollins evaluated defendant by court order for the purpose of determining his capacity to proceed, his personal observations taken together with the other materials considered provided an adequate basis for his opinion that defendant was capable of forming the requisite intent to kill at the time of the shooting.

We find the trial court did not err in allowing Dr. Rollins to give his opinion as to defendant's mental state at the time of the shooting, and, therefore, we hold the trial court did not commit plain error.

NO ERROR.

Judges McGEE and HUDSON concur.