STATE OF NORTH CAROLINA
v.
WILMER ALFREDO UBEDA, Defendant.
No. COA08-497
Court of Appeals of North Carolina
Filed April 7, 2009
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Sharon Patrick-Wilson, for the State.
William D. Auman for the defendant.
ELMORE, Judge.
Wilmer Alfredo Ubeda (defendant) appeals from judgments entered upon jury verdicts finding him guilty of robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon. For the reasons stated herein, we find no error.
At trial, the State's evidence tended to show that on 16 August 2006, Tim McKechnie (McKechnie) flew in to Charlotte on a business trip. After meeting his business partner at the airport, McKechnie rented a car and drove to the Marriott Hotel.
Upon arrival, McKechnie parked his vehicle in front of the hotel and went inside to check in. After checking in, McKechnie drove his vehicle to a parking space near the entrance of the hotel. After parking, McKechnie opened the rear hatch back of his rental car to get his luggage out. As he was removing his luggage, a white minivan with a red stripe pulled in and parked approximately two spaces away from his vehicle. The passenger sliding door opened, and three men got out of the vehicle and approached him. Defendant was positively identified by McKechnie in the courtroom as one of the men who approached him.
A rifle was held to McKechnie's head as the robbers demanded his money and searched through his pockets. The robbers took approximately $280.00 in cash and personal property including his credit cards, license, Blackberry cell phone, and hotel room key. After the robbers returned to the white van and pulled away, McKechnie ran into the Marriott, reported the robbery to the manager, and had him call the police. Officer Gregory Williams (Officer Williams) of the Charlotte-Mecklenburg Police Department (CMPD) responded to the call and interviewed McKechnie in the parking lot at the scene of the robbery. As McKechnie was describing the three individuals who robbed him and their van, he observed the same white van with a red stripe driving past the hotel and alerted Officer Williams. Officer Williams called in the sighting over his radio and five minutes later Officer Kenneth Ball (Officer Ball) of the CMPD located and approached the white van. Officer Ball observed two suspects exiting via the white van's sliding door and detained them at gun point until other officers arrived. At trial, defendant was positively identified by Officer Ball as one of the two suspects he detained. After other officers arrived and secured the scene, Officer Ball called Officer Williams to bring McKechnie to the scene to identify the suspects in a show-up procedure. McKechnie positively identified defendant as one of the men who robbed him.
On 15 October 2007, true bills of indictment were returned charging defendant with robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon. Defendant was tried and convicted on both counts and received a term of 82 to 108 months' imprisonment. Defendant filed notice of appeal.

I.
Defendant's first assignment of error contends that the trial court committed plain error by allowing the in-court identification of defendant by McKechnie into evidence as it was the product of a show-up procedure that violated defendant's constitutional rights. We do not agree.
Pursuant to the North Carolina Rules of Appellate Procedure, "[i]n order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C.R. App. P. 10(b)(1) (2007). Defendant concedes that no objection was offered at trial to McKechnie's in-court identification of defendant. However, in a criminal case, a question which is not preserved by objection may nevertheless be reviewed under a plain error standard of review. N.C.R. App. P.10(c)(4) (2007). As such, our review of this issue is limited to plain error.
"Plain error is applied cautiously and only in exceptional cases." State v. Augustine, 359 N.C. 709, 717, 616 S.E.2d 515, 523 (2005). Plain error exists where
after reviewing the entire record, it can be said the claimed error is a "fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where [the error] is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.
State v. Odom, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quotations and citations omitted; alteration in original). To succeed under this standard, defendant must establish that "the error was so fundamental that, absent the error, the jury probably would have reached a different result." State v. Jones, 355 N.C. 117, 125, 558 S.E.2d 97, 103 (2002).
Defendant correctly asserts that the United States Supreme Court and the Supreme Court of North Carolina have criticized show-ups as inherently suggestive "because the witness would likely assume that the police had brought [him] to view persons whom they suspected might be the guilty parties." State v. Oliver, 302 N.C. 28, 44-45, 274 S.E.2d 183, 194 (1981) (internal quotations and citations omitted). "Identification evidence must be excluded as violating a defendant's rights to due process where the facts reveal a pretrial identification procedure so impermissibly suggestive that there is a very substantial likelihood of irreparable misidentification." State v. Hammond, 307 N.C. 662, 667, 300 S.E.2d 361, 364 (1983) (citations omitted).
In determining whether a pretrial show-up identification possesses sufficient reliability, the Court must determine whether under the totality of the circumstances the identification is "so unnecessarily suggestive and conducive to irreparable mistaken identity as to offend fundamental standards of decency and justice." State v. Grimes, 309 N.C. 606, 609, 308 S.E.2d 293, 294 (1983) (citation omitted). Our Supreme Court has held that "even if the pretrial procedure is suggestive, that suggestiveness rises to an impermissible level only if all the circumstances indicate that the procedure resulted in a very substantial likelihood of irreparable misidentification." Id. Factors to be considered when evaluating the potential of irreparable misidentification include: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. State v. Harris, 308 N.C. 159, 164, 301 S.E.2d 91, 95 (1983).
After our review of the record, transcript, and above-listed factors, we conclude, based on the totality of the circumstances, that the trial court properly admitted both McKechnie's pretrial and in-court identification of defendant as both were sufficiently reliable.
McKechnie had ample opportunity to view defendant during the course of the robbery. Although the incident occurred at night, the hotel's parking lot was lit and McKechnie was able to observe his surroundings. The white minivan with the red stripe driven by defendant parked approximately two parking spaces away from McKechnie just prior to the robbery. McKechnie was later able to describe to Officer Williams how defendant and the others exited the van and subsequently approached him. During the course of the robbery, defendant and the other men were less than three feet away from McKechnie; they were close enough to touch him, go through his pockets, or hold a gun against his head.
Within fifteen minutes of the robbery, McKechnie spoke with Officer Williams and offered him a statement. While giving his statement, McKechnie was able to describe the men who robbed him, their clothing, and the white van with the red stripe they drove; he was even able to identify the van as it drove past the Marriott while he was giving his statement. McKechnie's description and subsequent identification of the van allowed officers to stop the vehicle within five minutes.
When the men in the van were apprehended, the clothing they wore and van they drove were consistent with the descriptions offered by McKechnie. They were positively identified by McKechnie as the men who robbed him in a show-up less than half an hour after the initial 911 call was made. At the show-up, McKechnie was able to identify the defendant as one of the robbers because he was the first to approach him and demand money.
Defendant argues that discrepancies in McKechnie's testimony regarding the clothing worn by defendant on the night of the robbery illustrate a misidentification based on impermissibly suggestive pretrial identification procedures. Despite minor discrepancies in the description of defendant's clothing, "[s]uch uncertainty goes to the credibility and weight of the testimony, and it is well established that the credibility, probative force, and weight [of the testimony are] matters for the jury."State v. Moses, 350 N.C. 741, 767, 517 S.E.2d 853, 869 (1999) (quotations and citation omitted; alterations in original). We find that the trial court properly permitted the identification testimony of McKechnie and the credibility and weight of his testimony were matters exclusively left for the jury to decide.
Considering the totality of the circumstances and Harris factors, we conclude that any suggestiveness of the show-up identification procedure was so slight that it did not "offend fundamental standards of decency and justice." Defendant has failed to carry his burden of establishing that the trial court committed plain error by allowing McKechnie's in-court identification of defendant. Thus, defendant's first assignment of error is overruled.

II.
Defendant next contends that the trial court erred by overruling his objection to admitting co-conspirator Danny Ibarra's statements into evidence as they were unduly prejudicial and obtained in violation of law. We do not agree.
The statements at issue were originally given by Ibarra, one of defendant's accomplices in the robbery of McKechnie. Ibarra, like defendant, was apprehended by Officer Ball and identified by McKechnie as one of the men who robbed him. While in police custody and being interviewed by Detective Curtis Driggers (Detective Driggers), Ibarra gave a statement explaining the plan to drive around looking for an individual to rob. Ibarra's statements further elaborated on the events that transpired that evening, including defendant's role in the robbery and proceeds he was to receive for his efforts.
At trial, defense counsel questioned Detective Driggers regarding these statements. The following exchange took place:
Q [defense counsel]: Okay. And you interviewed Danny Ibarra, didn't you?
A [Detective Driggers]: Yes, sir.
Q: And Danny Ibarra also told you that Steven had the gun, didn't he?
A: I don't have the statement in front of me but, as I remember, yes.
Q: Okay. And Danny told you that he was the one holding the bullets during the robbery, is that correct?
A: As I recall, yes.
Q: And Danny told you that he was the one that took the gentleman's room key, and some other personal items, is that correct?
A: Again from memory, it is.
Following this line of questioning, the State, over the objection of defendant, used Ibarra's statement to refresh Detective Driggers's memory.
From the onset we note that defendant's contention that Ibarra was not advised of his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 16 L. Ed. 2d 694 (1966), or N.C. Gen. Stat. § 7B-2101 (2007) is incorrect. The record indicates that prior to being questioned by Detective Driggers and making the statements at issue, Ibarra stated he was read his Miranda rights and waived them in writing. As such, this argument is without merit.
N.C. Gen. Stat. § 15A-1226 provides that each party may "' introduce rebuttal evidence concerning matters elicited in the evidence in chief of another party' . . . and gives the trial court the discretion to allow `any party to introduce additional evidence at any time prior to the verdict.'" State v. McClary, 157 N.C. App. 70, 79, 577 S.E.2d 690, 696 (2003) (quoting N.C. Gen. Stat. § 15A-1226).
With regard to rebuttal testimony such as the Ibarra statements at issue, "[t]he State has the right to introduce evidence to rebut or explain evidence elicited by defendant although the evidence would otherwise be incompetent or irrelevant." State v. Johnston, 344 N.C. 596, 605, 476 S.E.2d 289, 294 (1996) (citations omitted). The admissibility of rebuttal evidence is left to the discretion of the trial court. State v. Johnson, 23 N.C. App. 52, 57, 208 S.E.2d 206, 210 (1974). The decision of a trial court to admit rebuttal evidence will not be reversed absent a showing of abuse of discretion. McClary, 157 N.C. App. at 79, 577 S.E.2d at 696 (citation omitted). "A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." State v. Thompson, 314 N.C. 618, 626, 336 S.E.2d 78, 82 (1985) (citation omitted).
Our review of the record and transcript reveals no such abuse of discretion as defendant "opened the door" to the admission of the Ibarra statements by questioning Detective Driggers about what he was told by Ibarra. Defendant was not prejudiced by the admission of Ibarra's statements to refresh Detective Driggers's memory. Additionally, the statements at issue gave the jury a greater understanding of the circumstances surrounding Detective Driggers's testimony in relation to Ibarra's statements.
As such, defendant's argument that the trial court admitted the statements in error is without merit, and this assignment of error is overruled.

III.
Defendant's third assignment of error is that the trial court erred by failing to dismiss both charges of robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon against defendant, as the evidence, when taken in the light most favorable to the State, was insufficient as a matter of law as to each offense. More specifically, defendant argues that the State failed to present sufficient evidence as to the requisite intent to unlawfully take the personal property of another withregards to robbery with a dangerous weapon. With regards to the charge of conspiracy to commit robbery with a dangerous weapon, defendant claims that the State failed to offer evidence of an unlawful agreement separate and independent from the underlying robbery. We do not agree.
When ruling on a defendant's motion to dismiss for insufficiency of the evidence, "the trial court must view all of the evidence, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." State v. Cross, 345 N.C. 713, 717, 483 S.E.2d 432, 434 (1997) (citation omitted). When viewed in this manner, the evidence must convince a juror beyond a reasonable doubt that the State has presented substantial evidence as to each essential element of the offense charged and that the defendant is the perpetrator of that offense. State v. Montgomery, 341 N.C. 553, 560-61, 461 S.E.2d 732, 735 (1995) (citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." Id. at 561, 461 S.E.2d at 735 (citation omitted). Additionally, "[i]f there is substantial evidence  whether direct, circumstantial, or both  to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." Id. (citation omitted). Here, the only issue raised by defendant was whether he possessed the requisite intent to unlawfully take the personal property from McKechnie.
Pursuant to N.C. Gen. Stat. § 14-87, robbery with a dangerous weapon is (1) an unlawful taking or an attempt to take personal property from the person or in the presence of another (2) by the use or threatened use of a firearm or other dangerous weapon (3) whereby the life of a person is endangered or threatened. State v. Mann, 355 N.C. 294, 303, 560 S.E.2d 776, 782 (2002) (citations omitted); N.C. Gen. Stat. § 14-87 (2007). The intent required for the offense is that the defendant must have intended to permanently deprive the owner of the property at the time of the taking. State v. Richardson, 308 N.C. 470, 474, 302 S.E.2d 799, 802 (1983) (citations omitted).
When . . . one takes property (1) with the specific intent wholly and permanently to deprive the owner of it, or (2) under circumstances which render it unlikely that the owner will ever recover his property and which disclose the taker's total indifference to his rights, one takes it with the intent to steal . . . . If one . . . has taken property from its owner without any color of right, his intent to deprive the owner wholly of the property may, generally speaking, be deemed proved if it appears he kept the goods as his own `til his apprehension, or that he gave them away, or sold or exchanged or destroyed them[.]
State v. Smith, 268 N.C. 167, 173, 150 S.E.2d 194, 200 (1966) (quotations and citation omitted). Additionally, when the circumstances indicate the use of a dangerous weapon to permanently deprive an owner of their property, "it makes no difference whether the intent to steal was formulated before the use of force or after it, so long as the theft and the use of force can be perceived by the jury as constituting a single transaction." State v. Rasor, 319 N.C. 577, 587, 356 S.E.2d 328, 335 (1987) (citation omitted).
When viewing the evidence in the light most favorable to the State, we believe that the facts tended to show an agreement among defendant and his accomplices to find an individual to rob, combined with the subsequent actions of traveling to the Marriott hotel to find an individual in the parking lot to rob, bringing a loaded rifle that was used to threaten McKechnie in the course of the robbery, and in fact carrying out the robbery by taking McKechnie's money and personal property including his credit cards, license, Blackberry cell phone, and hotel room key. Additionally, defendant confessed to his involvement in the robbery during the questioning which occurred after his arrest. We believe that this evidence was sufficient to support a reasonable finding as to each element of robbery with a dangerous weapon, and more specifically, the element of intent to unlawfully take the personal property from the person.

IV.
Finally, defendant argues that insufficient evidence was produced at trial to support his conviction of conspiracy to commit robbery with a dangerous weapon. We disagree.
A conspiracy must be established independently of the declarations or acts sought to be admitted. State v. Wells, 219 N.C. 354, 356, 13 S.E.2d 613, 614 (1941). A conspiracy is "an agreement to do an unlawful act or to do a lawful act by unlawful means, whether or not overt acts occurred." Collins, 81 N.C. App. 346, 350, 344 S.E.2d 310, 313 (1986) (citation omitted). The existence of the conspiracy "may be shown by direct or circumstantial evidence." State v. Withers, 111 N.C. App. 340, 344, 432 S.E.2d 692, 695 (1993) (citation omitted). "A conspiracy `may be, and generally is, established by a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, . . . point unerringly' to its existence." Id. (quoting State v. Fink, 92 N.C. App. 523, 530, 375 S.E.2d 303, 307 (1989)) (alteration in original). An express agreement for purposes of a conspiracy "need not be shown; a mutual, implied understanding is sufficient." State v. Collins, 81 N.C. App. at 350, 344 S.E.2d at 314 (citation omitted).
In determining the sufficiency of the evidence for a conspiracy, evidence is to be considered in the light most favorable to the State. State v. Williams, 345 N.C. 137, 142, 478 S.E.2d 782, 784 (1996) (citation omitted). "The State's burden of proof is to produce evidence sufficient to permit the jury to find the existence of a conspiracy, but the State is not required to produce evidence sufficient to compel the jury to find a conspiracy." Id. (citations omitted).
In light of these principles, we believe that the evidence sufficiently established a prima facie case of a conspiracy involving defendant and Ibarra to rob individuals such as McKechnie. The evidence tended to show that defendant, Ibarra, and other accomplices agreed to drive to the Marriott parking lot to look for someone to rob. Defendant agreed to and did in fact drive Ibarra and the others to the Marriott in his white minivan with the red strip that was later identified by McKechnie. Both defendant and Ibarra exited the van and approached McKechnie with the intention of robbing him. After robbing McKechnie, they divvied up the money taken among themselves and the other accomplices. We believe that this evidence, when viewed in a light most favorable to the State, is sufficient to meet the State's burden "to produce evidence sufficient to permit the jury to find the existence of a conspiracy."
As such, defendant's argument is without merit, and this assignment of error is overruled.

V.
Thus, the trial court did not err in allowing the in-court testimony, or in failing to dismiss either charge against defendant as there was sufficient evidence presented by the State as to defendant's guilt of both robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon. We find that defendant received a trial free from error.
No error.
Judges HUNTER, Robert C., and GEER concur.
Report per Rule 30(e).